# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-3720

_____

Roseetta Williams, Individually and as Special Administrator of the Estate of Cletis Williams

*Plaintiff - Appellee*

v.

Nicholas Holley, Personally and in his Official Capacity as Police Officer for Jonesboro Police Department

*Defendant - Appellant*

City of Jonesboro, Arkansas

*Defendant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Jonesboro

_____

Submitted: June 10, 2014
Filed: August 25, 2014

_____

Before RILEY, Chief Judge, BYE and KELLY, Circuit Judges.

_____

BYE, Circuit Judge.

Roseetta Williams (Roseetta) filed this 42 U.S.C. § 1983 suit against former Jonesboro, Arkansas, Police Officer Nicholas Holley (Holley) in his individual capacity, alleging Holley used excessive force in tasing and shooting Cletis Williams (Cletis), Roseetta's father. Holley moved for summary judgment on the basis of qualified immunity. The district court[1] denied the motion. We affirm.

I

On October 31, 2011, Holley was on patrol when he noticed Cletis arrive at his residence. Holley knew of Cletis and was aware Cletis had twenty-three outstanding arrest warrants.[2] Holley waited until Cletis entered the residence and then approached Cletis's home and knocked. Cletis did not answer at first, but responded once he realized Holley had spotted him.

At the door, Holley tried to talk Cletis into exiting the trailer. Cletis refused and would only talk to Holley through a closed screen door. Holley informed Cletis about the warrants and told Cletis he was going to be arrested. Cletis complained about being arrested and asked Holley to "cite [him] to court" instead, claiming he had business with the federal court. Cletis opened the screen door and offered two envelopes to Holley to support this claim. Holley refused to take the envelopes because they were unopened.

Holley then grabbed Cletis's left arm and told Cletis he was under arrest. Cletis pulled back into the trailer, dragging Holley, who held onto Cletis's arm,

---

[1]The Honorable Kristine G. Baker, United States District Judge for the Eastern District of Arkansas.

[2]Cletis's arrest warrants were for non-violent misdemeanors including possession of marijuana, various traffic violations, and contempt of court stemming from those misdemeanors.

inside. Holley then attempted to handcuff Cletis. He pushed Cletis's face into the wall and forced Cletis's left arm behind his back, ordering Cletis to put his right arm behind his back. Cletis refused to move his right arm, but did not attempt to fight Holley. Deeming the situation an impasse, Holley pushed Cletis away from him. Cletis ended up standing approximately five to six feet away from Holley. Cletis did not attempt to get away, say anything, make threatening gestures, or advance on Holley.

Holley drew his taser on Cletis and ordered Cletis to the ground. Cletis stood still, remaining silent and not making any threatening gestures. At this point, Holley attempted to call for backup, but his call failed due to the radio channel being in use. Holley then discharged his taser in dart mode which hit, but did not seem to affect, Cletis. Cletis raised an arm to try to pull out the darts, prompting Holley to approach with the intent of applying the exposed prongs of the taser directly to Cletis's body. When Holley approached, Cletis took the taser away and pressed the prongs against Holley's left shoulder.

Holley tripped, ending up laying face-up on Cletis's couch. Cletis ended up sitting on top of Holley, using both hands to press the prongs of the activated taser tightly to Holley's left shoulder. Holley claims the taser disabled his left shoulder but maintains he was able to use his left arm to attempt to shift Cletis off of him. As the two struggled, Holley used his right hand to draw his pistol and point it at Cletis's stomach. Holley ordered Cletis off of him. Cletis continued pressing the taser into Holley's shoulder, but used one hand to grab the barrel of the pistol. This initially prevented Holley from firing, but eventually Holley jerked the gun back toward him and fired a shot into Cletis's stomach. Cletis then grabbed the gun with both hands, forcing it up near the right side of Holley's head. Holley fired a second shot at this point, while one of Cletis's hands was still over the barrel.

After the second shot, Holley used his left hand to shift Cletis enough to slip his left leg free. Holley used his left foot to push Cletis up off of him. According to Holley, Cletis was still aggressive, leaning forward with his arms raised toward Holley and continuing to come at Holley. Holley fired four more shots into Cletis's chest, all at a distance of less than three feet. Cletis then stood up and stumbled out of the trailer, where he collapsed on the ground outside. Holley called for assistance and, shortly thereafter, other officers and paramedics arrived. Cletis was taken to a hospital where he died.

During an internal investigation which followed, Holley described the events as above. The internal investigation and coroner's examination revealed some possible inconsistences with the account Holley had provided. These inconsistences called into question whether Cletis tased Holley in the manner indicated and whether Cletis was in the position Holley claimed when Holley shot him.

Roseetta filed this suit against Holley in his individual and official capacities, alleging Holley had used excessive force in attempting to arrest Cletis.[3] Holley moved for summary judgment on the basis of qualified immunity. The district court granted summary judgment for Holley with regard to the official capacity claim, but denied it for the individual capacity claim, finding the inconsistencies had created questions of material fact. Holley filed this interlocutory appeal, challenging the district court's denial of his summary judgment motion as to the claim against him in his individual capacity.

---

[3]Roseetta also alleged a failure-to-train claim against the City of Jonesboro. The district court dismissed the claim. Roseetta does not appeal the dismissal.

II

Holley contends the district court erred by not granting him summary judgment on the basis of qualified immunity. "We review the district court's denial of summary judgment on the basis of qualified immunity de novo, viewing the evidence in the light most favorable to the non-moving party and giving that party the benefit of all reasonable inferences." Edwards v. Byrd, 750 F.3d 728, 731 (8th Cir. 2014) (citation omitted).

"Government officials who perform discretionary functions are entitled to qualified immunity unless their alleged conduct violated clearly established federal constitutional or statutory rights of which a reasonable person in their positions would have known." Ottman v. City of Independence, Mo., 341 F.3d 751, 756 (8th Cir. 2003). Therefore, to determine whether an official is entitled to summary judgment on the basis of qualified immunity, we review (1) whether the facts alleged, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right, and (2) whether the right was clearly established when the alleged violation occurred, such that a reasonable official would have known his actions were unlawful.[4] Fourte v. Faulkner Cnty., Ark., 746 F.3d 384, 387 (8th Cir. 2014) (citing Keil v. Triveline, 661 F.3d 981, 985 (8th Cir. 2011)). "If the answer to either question is no, then the agents are entitled to qualified immunity." Keil, 661 F.3d at 985.

On appeal, Holley contends Roseetta failed to sufficiently allege a violation of a constitutional right. Roseetta's excessive force claim is based on two allegations. First, Holley's decision to tase Cletis was unreasonable. Second, Holley unreasonably used lethal force when he repeatedly shot Cletis. An excessive force

---

[4]Holley makes no argument challenging whether Cletis's right to be free from the use of excessive force under the circumstances here was clearly established.

claim in the context of an arrest is "evaluated under the reasonableness standard of the Fourth Amendment." Coker v. Arkansas State Police, 734 F.3d 838, 842 (8th Cir. 2013) (quoting Johnson v. Carroll, 658 F.3d 819, 825 (8th Cir. 2011)).

The reasonableness of a particular use of force must be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vison of hindsight." Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009) (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). "The reasonableness inquiry, however, is an objective one: the question is whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting them." Id. (citation and internal quotation marks omitted). "Circumstances relevant to the reasonableness of the officer's conduct include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (citations and internal quotation omitted).

Holley contends there is insufficient evidence for a reasonable juror to find his decision to use lethal force against Cletis was unreasonable. Holley, in essence, contends the court is bound to accept his version of events because he is the only surviving eyewitness of the altercation. Holley, however, overlooks the circumstantial evidence which shows possible inconsistencies with Holley's account of the shooting.

As the district court found, the circumstantial evidence raised questions of fact regarding material aspects of Holley's account of the event. We must view these inconsistencies in the light most favorable to Roseetta, giving Roseetta the benefit of all reasonable inferences. Tolan v. Cotton, 134 S. Ct. 1861, 1863 (2014); Edwards, 750 F.3d at 731.

First, Holley claims Cletis triggered the taser and used it on him for a full five-second cycle, pressing it tightly to Holley's shoulder. During the initial investigation, however, it was found that tightly pressing an activated taser to a uniform like Holley's could leave a mark on the uniform. There was no such mark on Holley's uniform. In addition, Holley testified his left shoulder had been disabled by the taser, but also claims he used his left arm to struggle with Cletis. Viewed in the light most favorable to Roseetta, a reasonable juror could infer Cletis had not tased Holley in the manner Holley claims.

There is also a question whether Cletis was in the position Holley claimed when Holley shot him. Holley contends he shot Cletis when there was no more than three feet between them. There was evidence, however, that shots fired from within three feet of a target typically leave powder stippling around the resulting wounds and such powder stippling was absent from Cletis's gunshot wounds. The evidence also indicated there are two reasonable explanations why powder stippling might not be present. First, an intervening object, such as clothing, might have gotten in the way of the shots. Second, Cletis may have been more than three feet away from Holley when Holley fired at Cletis. Holley urges us to adopt the first explanation. In this context, however, we must adopt the inference most favorable to Roseetta. Accordingly, the absence of powder stippling around Cletis's wounds would support a reasonable juror in finding Cletis was actually shot when further than three feet away from Holley.

Similarly, there is a question raised by the coroner's description of the paths of the gunshot wounds in Cletis's forearms. Holley claimed Cletis had his arms raised toward Holley and was aggressively coming at him when Holley fired the last four shots at Cletis. However, the paths of the two gunshot wounds in Cletis's

forearms[5] suggest Cletis's arms may have been raised in a defensive position when Holley shot him. Viewing the evidence in the light most favorable to Roseetta, a reasonable juror could find Cletis had been raising his arms to defend himself from Holley's gunshots rather than attacking as Holley described.

These inferences taken together would support a reasonable conclusion Cletis was not the threat Holley described and Holley's use of lethal force against Cletis was unreasonable. Accordingly, the district court did not err in denying Holley's motion for summary judgment on the excessive force claim with regard to Holley's use of lethal force.[6]

III

The judgment of the district court is affirmed.

_____

[5]The bullet which pierced Cletis's left forearm followed a path from the back of the forearm near the elbow towards the front of the forearm near the wrist. The bullet which pierced Cletis's right forearm followed a path nearly straight through it from back to front. Appellant's Appendix 76-77.

[6] Our review of the sufficiency of the evidence surrounding the use of lethal force makes it clear Holley is not entitled to qualified immunity on Roseetta's excessive force claim. Accordingly, we need not reach Holley's use of the taser.