# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2942

_____

Noelle Roselyn Aipperspach, as Personal Representative of the Estate
of Mahir S. Al-Hakim, deceased

*Plaintiff - Appellant*

v.

Patrick McInerney, in his official capacity as Board President, Kansas City Board
of Police Commissioners, et al

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: April 14, 2014
Filed: September 5, 2014

_____

Before LOKEN, MURPHY, and KELLY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Surrounded by police officers from multiple jurisdictions in a wooded ravine in Riverside, Missouri, Mahir S. Al-Hakim was fatally shot by several officers when he refused repeated demands to drop the gun he was holding, and waved the gun in the direction of many officers after losing his balance. Al-Hakim's sister, Noelle

Aipperspach, the personal representative of his estate, brought this 42 U.S.C. § 1983 action asserting official and individual capacity Fourth Amendment excessive force claims against multiple law enforcement officers and agencies. The district court[1] granted separate summary judgment motions filed by the City of Riverside, its police chief, Gregory Mills, and police officers Trevor Ballard and Matthew Westrich; and by the Kansas City Board of Police Commissioners and Kansas City Police Officer Robbie McLaughlan. Aipperspach appeals. Reviewing the grant of summary judgment *de novo*, we affirm.

## I.

This tragic incident began when William Hart called the Riverside Police Department on March 18, 2010, reporting that a friend, Al-Hakim, refused to leave Hart's apartment. Detective Billy Aaron and Captain Michael Costanzo were dispatched to Hart's apartment. Hart informed them that Al-Hakim had come to borrow money, had left the apartment, and was headed into a nearby wooded area. After speaking with Hart, Aaron and Costanzo were told by police dispatch that there might be an unspecified warrant for Al-Hakim's arrest. They began looking for Al-Hakim in the woods behind Hart's apartment.

Riverside Police Sergeant Dennis Jones heard the police radio call and joined the search. Jones found Al-Hakim sitting at the bottom of a ravine. Jones identified himself and asked Al-Hakim to come up and talk. Al-Hakim refused and produced what appeared to Jones to be a black handgun but was in fact a Daisy 008 air pistol capable of firing steel BBs or lead pellets. Sergeant Jones drew his weapon and yelled to Al-Hakim to drop the gun. Hearing that command, Detective Aaron went down the hill to stand next to Jones, and Captain Costanzo radioed for assistance.

---

[1]The Honorable David Gregory Kays, now Chief Judge of the United States District Court for the Western District of Missouri.

Additional officers from Riverside and neighboring police departments responded to Costanzo's call for officer assistance. In depositions, each officer who observed Al-Hakim in the ravine testified that he believed Al-Hakim was holding a semiautomatic handgun. The Daisy pistol's packaging was on the ground near Al-Hakim, but the summary judgment record does not show that it was visible to the officers.

The responding officers positioned themselves along the ridge on the edge of the ravine above Al-Hakim. Sergeant Ballard, armed with a rifle, positioned himself near Sergeant Jones to provide cover for the officers interacting with Al-Hakim. Officer Westrich, armed with a shotgun, and Officer McLaughlan, carrying an assault rifle, moved around the ridge above Al-Hakim and positioned themselves to Sergeant Jones's right, partially covered by trees.

An audio from the lapel microphone of Gladstone Officer Christopher Morales recorded twelve audible requests by Sergeant Jones and other officers that Al-Hakim drop his weapon in the three and a half minutes prior to the shooting. Al-Hakim did not comply. During most of the encounter, he kept the muzzle of the gun pointed at his own body or head, but at one point, Jones testified, Al-Hakim pointed the gun in Jones's direction. Jones warned Al-Hakim that if he pointed the gun at the officers again, they would shoot. A minute or two later, Al-Hakim attempted to change position and slipped, falling backwards. The officers testified that as Al-Hakim regained his balance, he pulled the hand holding the gun away from his own chin and swung it up and around, pointing the gun in the direction of the officers on the ridge. One officer testified that Al-Hakim appeared intoxicated. Within seconds, defendants Ballard, Westrich, and McLaughlan and four other law enforcement officers fired their weapons at Al-Hakim. Ballard testified he perceived Al-Hakim as a threat. Westrich testified he feared for his life and the lives of the officers near him when Al-Hakim swung the gun around. McLaughlan testified he "felt endangered" by Al-Hakim's sudden movement. The sound of the gunshots on Officer Morales's lapel microphone lasted about four seconds.

A news helicopter circling overhead captured the incident on video. Consistent with the officers' version of events, it depicts law enforcement personnel arrayed on the ridge in a half-circle above Al-Hakim, who is sitting at the bottom of a ravine holding a black gun in his left hand. The video shows Al-Hakim slipping and straightening back up. In the process, his left hand moves the gun away from his head, out in front of his body, and sweeps up toward the officers on the ridge. As Aipperspach describes that movement, "as if attempting to surrender." Almost immediately, the video shows Al-Hakim fall as he is struck by multiple bullets.

Al-Hakim died from his injuries, and this lawsuit followed. The Kansas City and Riverside defendants separately moved for summary judgment, arguing that Aipperspach's § 1983 claims fail because the undisputed facts demonstrate that the officers' use of deadly force was objectively reasonable under the circumstances. The district court agreed. Aipperspach appeals that final order.

## II.

The officers' use of deadly force was a seizure of Al-Hakim under the Fourth Amendment. Thus, Aipperspach's § 1983 claims of excessive force are governed by the Fourth Amendment prohibition against unreasonable seizures. Graham v. Connor, 490 U.S. 386, 395 (1989). "The reasonableness of a use of force turns on whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his subjective intent or motivation." Loch v. City of Litchfield, 689 F.3d 961, 965 (8th Cir. 2012). "The use of deadly force is reasonable where an officer has probable cause to believe that a suspect poses

a threat of serious physical harm to the officer or others." Id., citing Tennessee v. Garner, 471 U.S. 1, 11 (1985).[2] We are hesitant to second-guess the "split-second judgments" of officers working in "tense, uncertain, and rapidly evolving situation[s]." Id. at 967, quoting Graham, 490 U.S. at 396-97. "It may appear, in the calm aftermath, that an officer could have taken a different course, but we do not hold the police to such a demanding standard." Estate of Morgan v. Cook, 686 F.3d 494, 497 (8th Cir. 2012) (quotation omitted).

The district court concluded that the officers' use of deadly force was objectively reasonable and therefore Al-Hakim's Fourth Amendment rights were not violated. The court explained: "there is no genuine issue of material fact that Officer McLaughlan, Sergeant Ballard and Officer Westrich, in making a split-second judgment in a situation that was tense, uncertain, and rapidly evolving, had probable cause to believe that Al-Hakim posed a threat of serious harm to them and others." Aipperspach v. McInerney, 963 F. Supp. 2d 901, 909 (W.D. Mo. 2013). Reviewing this conclusion *de novo* and taking the material facts in the light most favorable to Aipperspach, we agree.

The responding officers were confronted with a suspect who held what appeared to be a handgun, refused repeated commands to drop the gun, pointed it once at Sergeant Jones, and then waved it in the direction of officers deployed along the ridge line in an action they perceived as menacing. In these circumstances, objectively reasonable officers had probable cause to believe that Al-Hakim posed a threat of serious physical harm to the officers. We have held in prior cases that

---

[2]In some contexts, "the sometimes hazy border between excessive and acceptable force" may require separate analysis of qualified immunity as well as the Fourth Amendment objective reasonableness standard under Graham. Saucier v. Katz, 533 U.S. 194, 204-07 (2001). We decline to separately consider qualified immunity in this deadly force case, where the Graham standard was clearly established.

officers confronted with similar situations acted in an objectively reasonable manner when they employed deadly force. In <u>Loch</u>, the police officer reasonably believed the suspect had a gun, even though in fact the suspect had discarded his weapon before walking toward the officer. 689 F.3d at 966-67. In <u>Morgan</u>, the officer fatally shot a suspect armed only with a knife who disregarded repeated requests to drop his weapon and took a step in the officer's direction. 686 F.3d at 497-98. In <u>Sinclair v. City of Des Moines</u>, we noted that "no constitutional or statutory right exists that would prohibit a police officer from using deadly force when faced with an apparently loaded weapon." 268 F.3d 594, 596 (8th Cir. 2001). In <u>Thompson v. Hubbard</u>, we affirmed the grant of summary judgment in favor of an officer who shot and killed an unarmed fleeing suspect, based on the officer's credible testimony that the suspect "looked over his shoulder . . . and moved his arms as though reaching for a weapon." 257 F.3d 896, 898-900 (8th Cir. 2001). <u>See also</u> <u>Penley v. Eslinger</u>, 605 F.3d 843, 851-54 (11th Cir. 2010).

On appeal, Aipperspach primarily argues that the district court erred in disregarding video footage taken from the news helicopter, which Aipperspach describes as "compelling evidence" that would permit a reasonable jury to find "that Mr. Al-Hakim's action of raising his hands above his head in response to the commands of the officers was an attempt to surrender." Aipperspach likens this video to the police cruiser video of a high-speed car chase in <u>Scott v. Harris</u>, an excessive force case in which the video "blatantly contradicted" the nonmoving party's version of the incident on which the Court of Appeals had relied in denying summary judgment. 550 U.S. 372, 380 (2007). The Supreme Court reversed, concluding the video established that the officer was objectively reasonable in applying deadly force to end a high-speed chase that endangered public safety. <u>Id.</u> at 383-86.

In this case, the district court did not ignore the news helicopter video. The court viewed the video and concluded that it "provides only the aerial perspective of

the person who recorded it" and therefore could not answer the issue of objective reasonableness from the perspective of an officer on the ground. Therefore, the court concluded, the video "does nothing to controvert the testimony of numerous officers [who] believed that Al-Hakim pointed a real firearm at officers, endangering their lives." Aipperspach, 963 F. Supp. 2d at 908-09.

This is not a case like Scott, where a video "blatantly contradicted" one party's version of the incident. Compare Hayden v. Green, 640 F.3d 150, 154 (6th Cir. 2011) (affirming the grant of summary judgment where the police video "plainly contradicted" plaintiff's description of the incident). Here, the video confirmed the officers' description of the sequence of events. Aipperspach argues that summary judgment was improper because the video would permit a reasonable jury to infer that Al-Hakim in raising his arm just before the officers fired was attempting to surrender, not "aiming" the gun at the officers. Therefore, her reply brief asserts, the video makes the record in this case comparable to that in Nance v. Sammis, where we reversed the grant of summary judgment in a deadly force case because eyewitness testimony and forensic evidence contradicted the officers' claim that they had identified themselves as police officers, and the young victim had raised his hand with a toy gun that was tucked in his waistband before they used deadly force. 586 F.3d 604, 610-11 (8th Cir. 2009).

We agree with the general proposition that a video of the incident can create a genuine issue of material fact that precludes the grant of summary judgment in an excessive force case, just as a video established undisputed facts warranting summary judgment in Scott. We nonetheless reject Aipperspach's contention because the video in this case does not cast doubt on the factual sequence of events; at most, it supports an inference that Al-Hakim may have intended to surrender, despite refusing repeated prior demands to drop the gun, or that he may have waved the gun above his head to regain his balance, rather than to threaten the police officers. Those possible inferences are not germane to the issue of Fourth Amendment objective

-7-

reasonableness. As the district court recognized, "the inquiry here is not into [Mr. Al-Hakim's] state of mind or intentions, but whether, from an objective viewpoint and taking all factors into consideration, [each defendant officer] reasonably feared for his life" or the lives of his fellow officers. Wilson v. Meeks, 52 F.3d 1547, 1553 (10th Cir. 1995). The video taken from high above the scene shed no material light on that question.

Aipperspach presented no evidence contradicting the testimony that many officers at the scene of this "tense, uncertain, and rapidly evolving situation" perceived that Al-Hakim's actions posed an immediate threat of serious physical harm to the officers. On appeal, she contends that the district court ignored various fact disputes in making its ruling. We have closely examined the record and conclude that the fact issues she identifies were not material to the summary judgment analysis. Rather, our many cases declining to second-guess the "split-second judgments" of officers in similar circumstances warranted the district court's conclusion that there was no genuine issue of material fact precluding the grant of summary judgment. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).

Our conclusion that the individual police officers did not violate Al-Hakim's Fourth Amendment rights in using deadly force resolves Aipperspach's appeal from the grant of summary judgment to the City of Riverside, Riverside Police Chief Gregory Mills, and the Kansas City Board of Police Commissioners. Absent a constitutional violation by the individual defendants, the municipal defendants are not liable to the plaintiff. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Sinclair, 268 F.3d at 596.

The judgment of the district court is affirmed.

_____

-8-