# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-3371

_____

Troy Ellison, as Personal Representative of the Estate of Eugene Ellison, deceased,

*Plaintiff - Appellee*,

v.

Donna Lesher, individually and in her official capacity; Tabitha McCrillis,
individually and in her official capacity,

*Defendants - Appellants*,

Stuart Thomas, individually and in his official capacity; City of Little Rock, a
municipality; Big Country Chateau Apartments, a corporation, doing business as
Big Country Chateau, LLC; Carl Schultz,

*Defendants*.

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: December 11, 2014
Filed: August 6, 2015

_____

Before WOLLMAN, COLLOTON, and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

On December 9, 2010, Officer Donna Lesher and Detective Tabitha McCrillis of the Little Rock Police Department, while working off duty, were patrolling the Big Country Chateau apartments in Little Rock. As events unfolded, Lesher shot and killed a 67-year-old resident named Eugene Ellison in his apartment. Troy Ellison, Eugene's son, brought this action under 42 U.S.C. § 1983 on behalf of his father's estate. The lawsuit alleges that Lesher and McCrillis violated Eugene Ellison's Fourth Amendment rights by unlawfully entering his home and subjecting him to an excessive use of force. Count I alleges unlawful entry, and Count II alleges excessive use of force.

Lesher and McCrillis moved for summary judgment based on qualified immunity, and the district court denied their motion. We conclude, based on the facts assumed by the district court, that the motion was properly denied as to Count I against both defendants and as to Count II against Lesher on the claim alleging unreasonable use of deadly force, because the assumed facts would show a violation of clearly established rights under the Fourth Amendment. The officers, however, are entitled to qualified immunity on Count II for the claim concerning their use of non-lethal force. We therefore affirm in part and reverse in part.

I.

In an interlocutory appeal from an order denying qualified immunity, we have authority to decide the purely legal issue whether the facts alleged by the plaintiff support a claim of violation of clearly established law. *Mitchell v. Forsyth*, 472 U.S. 511, 528 n.9 (1985). We do not, by contrast, have jurisdiction to review which facts a party may, or may not, be able to prove at trial. *Johnson v. Jones*, 515 U.S. 304, 313 (1995). In considering the appeal by the officers, therefore, we are constrained

by the facts that the district court assumed in reaching its decision. We now set forth those facts.

As of 2010, pursuant to an agreement with the Big Country Chateau apartment complex, off-duty Little Rock police officers patrolled the apartments as secondary employment. On the evening in question, Lesher and McCrillis were patrolling the apartments when they noticed that the door to Ellison's apartment was open.

From outside, Lesher and McCrillis could see Ellison sitting on his couch inside the apartment. Ellison appeared relaxed, and was leaning on his cane. After Lesher and McCrillis started a conversation with Ellison, he responded that he did not want their help or attention and told the officers to leave him alone.

McCrillis thought Ellison was being mouthy with her and wanted to keep him from shutting the door on the officers. McCrillis stepped inside the apartment, followed by Lesher, and asked Ellison what was his problem. Ellison got up from the couch and approached the officers standing at the door. McCrillis shoved Ellison, Ellison pushed back, and a physical altercation ensued. During the course of the struggle, McCrillis and Lesher repeatedly struck Ellison and knocked off his glasses. Ellison repeatedly told the officers to get out of his apartment and to leave him alone.

At some point during the encounter, McCrillis requested help from back-up units at the Little Rock Police Department. Officers Vincent Lucio and Brad Boyce arrived on the scene shortly thereafter. The physical altercation was over when Lucio and Boyce arrived, but Lesher was still inside the apartment, and Lucio reached inside to pull Lesher out.

The officers then instructed Ellison to lie down, and he refused. Lesher next told McCrillis that Ellison was getting his cane, and that she was going to shoot Ellison. She then fired two shots into the apartment, killing Ellison. After reviewing

the record, the district court concluded that it is not clear whether Ellison was holding his cane when he was shot.

Ellison's son Troy, as personal representative of Ellison's estate, sued Lesher and McCrillis. The complaint alleged two violations of the Fourth Amendment, one premised on an alleged unlawful entry, the other based on alleged excessive use of force. Lesher and McCrillis moved for summary judgment, arguing that qualified immunity barred Ellison's suit. The district court denied the motion, and the officers appeal.

II.

Qualified immunity shields police officers from suit in a § 1983 action unless their conduct violated a clearly established right of which a reasonable official would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). A plaintiff need not show that the "very action in question has previously been held unlawful," *id.*, but he must establish that the unlawfulness was apparent in light of preexisting law. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). "The salient question is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged conduct was unconstitutional." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quotations and alterations omitted). "When properly applied, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (brackets and internal quotation omitted).

A.

On the claim that the officers unlawfully entered Ellison's apartment, the district court reasoned as follows: "Viewing the facts in the light most favorable to Ellison, it cannot be concluded as a matter of law that an objectively reasonable basis existed for the officers to believe that they needed to enter the apartment because Ellison or someone else within the apartment needed immediate aid." The district court also said "[i]t is clear that entering a home without a warrant, absent consent or exigent circumstances, violates a clearly established right."

The officers argue that they lawfully entered Ellison's apartment without a warrant under their authority to act as community caretakers who may assist a person who is seriously injured or threatened with such injury. The rule that they invoke, whether denoted as an exception to the warrant requirement for "community caretaking" or "emergency aid," *see Burke v. Sullivan*, 677 F.3d 367, 371 & n.5 (8th Cir. 2012), is this: "A police officer may enter a residence without a warrant . . . where the officer has a reasonable belief that an emergency exists requiring his or her attention." *United States v. Quezada*, 448 F.3d 1005, 1007 (8th Cir. 2006); *see Ryburn v. Huff*, 132 S. Ct. 987, 990 (2012); *Mincey v. Arizona*, 437 U.S. 385, 392-93 (1978).

According to Lesher and McCrillis, the scene they confronted at Ellison's apartment justified their entry. The officers submit that they observed an open apartment door in a high crime area on a cold December night, saw Ellison sitting behind a broken glass table in a disheveled apartment, and received an oblique response from Ellison—"what does it look like"—when they asked whether he was okay. Under this set of facts, the officers urge, it was reasonable for them to enter and investigate whether someone needed assistance. At a minimum, they say, a reasonable officer could have believed that it was reasonable to do so, such that qualified immunity applies.

-5-

We cannot accept the contention of the officers, because it would require us to examine a matter over which we lack jurisdiction—"which facts a party may, or may not, be able to prove at trial." *Johnson*, 515 U.S. at 313. The facts assumed by the district court did not include salient points urged by the officers: a broken glass table visible to the officers, a disheveled apartment suggesting a disruption, and an ambiguous response by Ellison. The district court's order assumed instead that Ellison appeared relaxed while sitting on his couch, that Ellison told the officers that he did not want their help or attention, and that Ellison told the officers to leave him alone. In an interlocutory appeal from a denial of qualified immunity, we may address only abstract issues of law, and we are constrained by the facts that were assumed in the district court's order.

Under the facts outlined by the district court, the officers are not entitled to qualified immunity. The district court assumed that the officers entered the apartment after "McCrillis thought Ellison was being mouthy with her and wanted to keep him from shutting the door on them." R. Doc. 170, at 2. The Fourth Amendment generally requires a warrant before police may enter a residence, *Payton v. New York*, 445 U.S. 573, 590 (1980), and while there are exceptions to the warrant requirement in exceptional situations, "mouthiness" of a resident is not one of them. The right to be secure in a residence against a warrantless entry was clearly established by *Payton* and other decisions as of December 2010. *See Steagald v. United States*, 451 U.S. 204, 211 (1981); *Smith v. Kansas City, Missouri Police Dept.*, 586 F.3d 576, 581 (8th Cir. 2009). Although the precise fact pattern described by the district court has not been the subject of a Supreme Court decision, officers were on fair notice that they could not enter a home simply because they perceived as mouthy a resident who told them that he wanted no help and desired to be left alone. Indeed, the officers do not argue that entry was permissible on that basis. They contend, as noted, that other facts not accepted by the district court justified their search. Limited as we are by the facts assumed in the district court's order, we affirm the denial of qualified immunity on the claim that McCrillis and Lesher unlawfully entered Ellison's residence.

B.

On the claim that Lesher used excessive force when she shot and killed Ellison, the district court concluded:

> Simply put, the facts, when viewed in the light most favorable to Ellison, indicate that Ellison, a 67 year old man, was standing in his own home when he was killed by Lesher, after she and McCrillis unlawfully entered his apartment and ignored his requests for them to leave. Although he was refusing to lie on the ground as the officers directed, the four officers, two male and two female, did not try to physically subdue him and it is undisputed that he was making no attempt to flee. Lesher also never warned him that she had a gun and would shoot if he did not drop his cane. As a result, a reasonable jury could find that Lesher used deadly force against a person who did not pose an immediate threat of serious physical injury or death to them.

The district court further ruled that Lesher was not entitled to qualified immunity, because "existing case law made it sufficiently clear to a reasonable officer that a suspect cannot be apprehended by use of deadly force unless that individual poses a threat of serious physical harm." R. Doc. 170, at 14 (citing *Nance v. Sammis*, 586 F.3d 604, 611 (8th Cir. 2009)).

The Fourth Amendment requires us to ask, based on the perspective of a reasonable officer on the scene, "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). "The use of deadly force is reasonable where an officer has probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others." *Loch v. City of Litchfield*, 689 F.3d 961, 965 (8th Cir. 2012). But where a person "poses no immediate threat to the officer and no threat to others," deadly force is not justified. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).

-7-

Lesher argues that her use of deadly force was reasonable, because Ellison had disobeyed multiple commands to lie down on the floor of the apartment, resisted officers during the altercation in the apartment, and charged at the officers while swinging a cane. On these facts, Lesher contends, a reasonable officer could have believed that there was a threat of death or serious physical injury to the officers or others. Invoking qualified immunity, moreover, she argues that it was not clearly established at the time of the incident that the Fourth Amendment prohibits the use of deadly force against a man under these circumstances.

We conclude, again, that we cannot accept the contention advanced by Lesher, because her framing of the abstract legal issue is premised on a set of facts that was not assumed by the district court. Lesher avers that Ellison charged at her and the other officers while swinging a cane. The district court, construing the evidence in the light most favorable to Ellison, thought it was "unclear whether or not Ellison was holding his cane," and that "[d]iscrepancies and variations in the officers' testimony make it impossible to determine what the facts and circumstances confronting Lesher were at the moment when she shot and killed Ellison." R. Doc. 170, at 3, 14. We do not have jurisdiction to review whether Ellison's estate will be able to prove at trial that Lesher shot Ellison while he was empty-handed. *Johnson*, 515 U.S. at 313. We must accept for purposes of our decision that Ellison was not wielding the cane when the shooting occurred.

Considering the abstract legal issue based on the facts assumed by the district court, we conclude that Lesher is not entitled to qualified immunity. If Lesher shot Ellison while he was simply standing in his apartment and holding no cane, then there were not reasonable grounds to believe that Ellison posed a serious threat of death or serious physical injury to the officers or others. Ellison's refusal of a command to lie down on the floor did not, by itself, make reasonable the use of deadly force.

Ellison's right to be secure against a seizure by the use of deadly force under those circumstances was clearly established as of December 2010.  Since the 1985 decision in *Tennessee v. Garner*, "officers have been on notice that they may not use deadly force unless the suspect poses a significant threat of death or serious physical injury to the officer or others."  *Craighead v. Lee*, 399 F.3d 954, 962 (8th Cir. 2005).  Although the precise scenario described by the district court does not appear in a reported decision, the officers were on fair notice that the use of deadly force would not be reasonable.  Lesher does not contend that a reasonable officer could have believed that it was reasonable to use deadly force merely to enforce an order that Ellison lie on the ground.  Her argument is premised on a different set of facts that the district court declined to accept in resolving the motion.  We therefore affirm the denial of qualified immunity on Ellison's claim against Lesher based on the use of deadly force.

C.

The officers also appeal the district court's denial of their motion for summary judgment on the claim that they used excessive non-lethal force against Ellison during the altercation in the apartment.  The district court did not address this aspect of their motion.  Insofar as the district court did not state the facts relevant to this portion of the claim, we have determined from the record what facts the court likely assumed. *See Johnson*, 515 U.S. at 319.

The district court stated that after McCrillis and Lesher entered Ellison's apartment, Ellison approached the door, McCrillis shoved Ellison, and Ellison pushed back.  There followed a physical altercation in which Ellison repeatedly told the officers to get out of his apartment, and the officers repeatedly struck Ellison.  According to the medical examiner's report of injuries, aside from the gunshot wounds that killed Ellison, the body showed a "minor right front galeal scalp

contusion," a "minor cutaneous abrasion of right lower arm," and "contusions of testes." Def.'s Mot. Summ. J. Ex. 6, at 11, R. Doc. 124.

The officers argue that they were entitled to protect themselves when Ellison responded to McCrillis's shove by "attacking" the officers. The district court assumed only that Ellison "pushed back," and that the officers then repeatedly struck him and knocked off his glasses. Whatever the reasonableness of the force used in light of the facts assumed by the district court, it was not clearly established as of December 2010 that a use of force causing only *de minimis* injury violated the Fourth Amendment. *Chambers v. Pennycook*, 641 F.3d 898, 908-09 (8th Cir. 2011). Our cases characterize relatively minor scrapes, bruises, and contusions as *de minimis*. *Ziesmer v. Hagen*, 785 F.3d 1233, 1236-37 (8th Cir. 2015); *Wertish v. Kreuger*, 433 F.3d 1062, 1066-67 (8th Cir. 2006). Taking the medical examiner's report as evidence of injuries suffered by Ellison, the bruises, scrapes, and contusions that Ellison experienced as a result of the altercation with officers were likewise *de minimis*. McCrillis is therefore entitled to qualified immunity on the claim of excessive force in Count II, and Lesher is entitled to qualified immunity for the use of non-lethal force inside the apartment before the shooting.

\* \* \*

A qualified immunity defense, although unsuccessful on a motion for summary judgment, may be renewed at trial. *Ortiz v. Jordan*, 562 U.S. 180, 184 (2011). At that point, the defense "must be evaluated in light of the character and quality of the evidence received in court." *Id*. As we have explained, the officers dispute the facts assumed by the district court in ruling on the motion for summary judgment, and they presumably will present evidence at trial to support their version of events. Even if a jury finds that the entry to Ellison's apartment or the use of deadly force was unreasonable under the Fourth Amendment, the district court (on proper motion) also must consider as a matter of law whether the actions of the officers violated a clearly

-10-

established right. *See Anderson v. Creighton*, 483 U.S. 635, 643-44 (1987). Given the potential significance of certain disputed facts to that inquiry, it would be appropriate for the district court to submit special interrogatories to a jury to aid the court in making the qualified immunity determination. *See Littrell v. Franklin*, 388 F.3d 578, 585-86 (8th Cir. 2004); *accord Gonzalez v. Duran*, 590 F.3d 855, 860-61 & 860 n.4 (10th Cir. 2009).

For the reasons stated, the order of the district court denying the motion for summary judgment based on qualified immunity is affirmed in part and reversed in part. McCrillis is entitled to qualified immunity on Count II, and Lesher is entitled to qualified immunity on those aspects of Count II that allege excessive use of non-lethal force inside Ellison's apartment. The district court's order denying qualified immunity on the claims of unlawful entry by the two officers and unreasonable use of deadly force by Lesher is affirmed.

———————————————