# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-4429

_____

Walter Louis Franklin, II, Trustee for the Estate of Terrance Terrell Franklin

*Plaintiff - Appellee*

v.

Lucas Peterson, individually, and in his official capacity; Michael Meath, individually, and in his official capacity; Janee Harteau, Chief of Police for the Minneapolis Police Department, individually and in her official capacity; City of Minneapolis

*Defendants - Appellants*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 19, 2017
Filed: December 26, 2017

_____

Before LOKEN, BEAM, and COLLOTON, Circuit Judges.

_____

BEAM, Circuit Judge.

After the shooting death of Walter Louis Franklin, II, at the hands of Minneapolis police officers, Franklin's estate ("the estate") brought this action against two officers, the City of Minneapolis and the Chief of Police claiming excessive force, wrongful death, and negligence. The defendants moved for summary

judgment, which the district court[1] denied on all but the negligence claim. The officers appeal the denial of summary judgment based on qualified immunity.[2] We dismiss the appeal for lack of jurisdiction.

## I. BACKGROUND

Herein we recite the facts as stated by the district court. This case is unique in that the bulk of the facts set forth by the district court are those advanced by the moving party because Franklin is deceased and was the only other individual at the scene with the officers.

On May 10, 2013, police became involved with Franklin after being contacted by a bystander who believed that Franklin was the person he had seen on security footage from an apartment building that had been previously burglarized. Police officers were dispatched to a parking lot where Franklin was located. Three officers initially responded. After the officers arrived, Franklin fled the scene in a vehicle he was driving and struck the door of one of the officers' squad cars as he did so.

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

[2]The Notice of Appeal states "All Defendants, in their official and individual capacities" appeal the district court's order denying qualified immunity under 42 U.S.C. § 1983 on the excessive force claim. However, qualified immunity is a personalized inquiry and courts are charged with evaluating the officials' conduct individually. Wilson v. Northcutt, 441 F.3d 586, 591 (8th Cir. 2006) ("Liability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed."). It is for this reason, we presume, that only Officers Peterson and Meath are referenced in the briefing and counsel clarified at oral argument that the appeal from the denial of qualified immunity necessarily only involves the two officers. On remand the district court should properly address the status of the City of Minneapolis and Chief Harteau in this action.

After fleeing from the parking lot, Franklin broke into a home and hid in the basement. Officers from the Minneapolis Police Department located Franklin, including Officers Peterson, Meath, Durand, Muro and Sergeant Stender with his K-9, Nash. According to the officers, K-9 Nash located Franklin behind a water heater in a small closet under the basement stairs in the home. K-9 Nash bit Franklin's clothing and tried to pull Franklin out from behind the water heater. Sergeant Stender claims that he ordered Franklin to "show his hands" several times but Franklin remained in his hiding spot and did not show his hands. The officers claimed that in an effort to compel Franklin to respond and comply with the officers' orders, Sergeant Stender approached Franklin and struck him in the head with a closed fist, and, when Franklin did not respond, Sergeant Stender hit Franklin with his flashlight. When Franklin continued to refuse to show his hands, Sergeant Stender moved into the closet and attempted to pull Franklin out by putting Franklin into a headlock. Sergeant Stender stated that Franklin resisted.

To assist, Officer Meath attempted to subdue Franklin by grabbing his shoulders, pulling him backwards, and delivering two to three knee strikes to Franklin's upper body. Officers Peterson and Durand stated that they heard Officer Meath yell "are you grabbing for my gun?" Officer Meath claimed that Franklin then forced his way out of the closet.

Once out of the closet, Officer Peterson stated that Franklin punched Officer Peterson in the face and that Officer Peterson grabbed Franklin's hair, ripping off some of Franklin's dreadlocks. Franklin then turned and tackled Officer Durand, driving him into the laundry room and to the floor. The officers claimed that as Franklin and Officer Durand fell, Franklin grabbed the pistol grip of Officer Durand's MP5 sub-machine gun and pulled the trigger twice. Officers Meath and Muro were each hit by bullets.

Officer Durand stated that a struggle ensued with Franklin over the MP5, during which the flashlight on the muzzle of the MP5 switched on and Officer Durand yelled out "he's got a gun." Officer Peterson stated that he saw the struggle over the firearm and that Franklin gained sufficient control of the firearm to point it at Officer Peterson. Officer Peterson claimed that in response to this perceived threat, he moved toward Franklin and Officer Durand, reached out in the darkness for Franklin's head, aimed his handgun, and fired at Franklin five times. Officer Meath, who had been shot by the MP5, claimed that he saw Franklin sitting on the ground, with his arms extended, with Officer Peterson "basically kind of on top of" Franklin. When he spotted a gap between Franklin and Officer Peterson, Officer Meath fired his handgun. Franklin suffered gunshot wounds to the head and torso of his body and was pronounced dead at the scene.

The estate presented evidence to the district court in support of its contention that there is a genuine dispute about the events that took place in that basement that day. In support of this argument, the estate relied in part on evidence from a video filmed by Jimmy Gaines ("the Gaines video") as well as a report from a proposed expert witness who reviewed the Gaines video and offered an analysis. According to the estate, the Gaines video and the accompanying analysis contradict the time line and sequence of events set forth by the officers. The estate highlighted a seventy-second gap of time between when the first shots were fired and the time the officers fired on Franklin, which the estate argued supported a conclusion that the sequence of events was not as presented by the officers and there remained a question as to whether Franklin posed a threat when he was shot and killed.

Too, the estate argued that the evidence gathered at the scene is inconsistent with the officers' testimony, additionally creating an issue of material fact as to the threat posed by Franklin when the events transpired. The estate pointed out that neither Officer Muro nor Officer Meath observed the MP5 being discharged. The estate additionally noted that the MP5 had no blood on it despite the officers'

testimony that there was an ongoing struggle when Franklin was shot, and there was ample amounts of blood on items in the laundry room and on Franklin himself. These inconsistencies, according to the estate, call into doubt whether Franklin was engaged in a struggle over the MP5 when he was shot and, more generally, whether he posed a threat of serious physical harm to the officers.

In its analysis the district court held that despite the officers' contention that the use of deadly force was reasonable under the circumstances they faced, the estate raised a genuine dispute as to whether the officers' story was true. The court specifically highlighted the evidence presented by the estate regarding the time gap and the absence of blood on the MP5 as circumstantial evidence that Franklin was not in possession of the MP5 when Officers Peterson and Meath used deadly force against him. Reviewing jurisprudence regarding the use of deadly force and the significant threat of death or serious physical injury to the officer or others that must exist when an officer uses deadly force, the court held that "a factual dispute exists over whether such a situation was present at the time when the officers used deadly force against Franklin." In the end, although the district court acknowledged the credible evidence submitted by the officers laying out the circumstances facing the officers at the time deadly force was used against Franklin, the court held the officers failed to demonstrate that no genuine dispute of material fact remained. "Indeed, [the estate's] evidence raises fact questions regarding the sequence of events leading to the use of deadly force against Franklin, as well as the existence and nature of any threat posed by Franklin when the officers shot him." Accordingly, the district court denied summary judgment on the excessive force and wrongful death claims. This interlocutory appeal followed.

## II.    DISCUSSION

This is an appeal from the denial of qualified immunity as to Officers Peterson and Meath, a doctrine that "shields a government official from liability unless his

conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Burns v. Eaton, 752 F.3d 1136, 1139 (8th Cir. 2014) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). Because it protects officials from the burden of defending insubstantial claims, as well as from damage liability, the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Pearson v. Callahan, 555 U.S. 223, 232 (2009) (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam).

We begin with jurisdiction, which is always our "first and fundamental question." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) (quoting Great S. Fire Proof Hotel Co. v. Jones, 177 U.S. 449, 453 (1900)). In an interlocutory appeal from an order denying qualified immunity, we have authority to decide the purely legal issue of whether the facts alleged by the plaintiff are a violation of clearly established law. Mitchell v. Forsyth, 472 U.S. 511, 528 n.9 (1985); Jackson v. Gutzmer, 866 F.3d 969, 975 (8th Cir. 2017) ("The pretrial denial of qualified immunity is an appealable final order to the extent it turns on an issue of law."). We do not, however, have jurisdiction to review a district court's interlocutory summary judgment order that "determines only a question of 'evidence sufficiency,' *i.e.*, which facts a party may, or may not, be able to prove at trial." Johnson v. Jones, 515 U.S. 304, 313 (1995).

As to the excessive force claim, the Fourth Amendment requires us to ask, from the perspective of a reasonable officer on the scene, "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989). Relevant here, "[t]he use of deadly force is reasonable where an officer has probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others." Ellison v. Lesher, 796 F.3d 910, 916 (8th Cir. 2015)

-6-

(quoting Loch v. City of Litchfield, 689 F.3d 961, 965 (8th Cir. 2012)). "But, where a person 'poses no immediate threat to the officer and no threat to others,' deadly force is not justified." Id. (quoting Tennessee v. Garner, 471 U.S. 1, 11 (1985)).

On the claim that the officers unlawfully used deadly force against Franklin, the officers argue that the district court accepted nearly all of the facts provided by the officers as undisputed, including, importantly, that Franklin fought with the officers, gained control of a sub-machine gun, shot two of them, and then struggled with an officer over control of the firearm. According to the officers, "[n]one of this was controverted below; all of it was assumed by the district court." In fact, according to the officers, the district court accepted all of the facts presented and focused on only two additional facts–the alleged time gap and the absence of blood on the MP5–in its denial of qualified immunity. As to these facts, the officers argue that they are either not material or are blatantly contradicted by the record. The problem with this argument, however, is that the district court did *not* hold that the facts relayed in its recitation were undisputed, and more importantly, we lack jurisdiction to review the factual issues that abound in this appeal. See Johnson, 515 U.S. at 313-18.

The officers argue that Franklin posed a threat of serious physical harm to each officer and that the district court's recitation of the undisputed facts supported a conclusion that the officers' actions were constitutional. However, merely stating the facts known to the court for purposes of drafting its opinion and conducting its analysis does not mean the district court found those facts undisputed. There is no such finding by the district court and, in fact, the court was careful to note throughout its recitation that the facts relayed were as advanced by the officers. The district court repeatedly stated that the facts relayed were "[a]ccording to Defendants," or as "Sergeant Stender claim[ed]," or as "Officers Peterson and Durand state[d]," and the like. Also, the district court similarly recited the estate's evidence, stating "Plaintiff contends," and "Plaintiff further argues," etc.

At no point did the district court deem particular facts undisputed, nor did it conduct a legal analysis based upon assumed facts. What the district court *did* do is plainly hold that the estate's evidence raised a genuine dispute as to whether the story told by the officers is true. For example, the court held that there was at least circumstantial evidence that Franklin was not in possession of the MP5 when Officers Peterson and Meath used deadly force against him. This statement by the district court, read in context, was not a determination that this precise moment was determinative in the constitutional analysis, but rather that based on the evidence presented by the estate, the court simply could not determine whether the evidence presented supported a finding that the officers faced a threat of serious physical harm when they used deadly force. This doubt informed by the evidence of the lapse in time and the absence of blood, according to the district court, calls into dispute the officers' version of the alleged struggle. Because the relevant legal inquiry is whether the officers believed that Franklin posed a threat of serious physical harm, and there was a question as to whether the version advanced by the officers was true, the district court denied qualified immunity in this instance. As stated by the district court, "[i]ndeed, [the estate's] evidence raises fact questions regarding the sequence of events leading to the use of deadly force against Franklin, as well as the existence and nature of any threat posed by Franklin when the officers shot him."

The instant case stands in contrast to appeals from denials of qualified immunity at summary judgment where this court does conduct a qualified immunity analysis based on facts the district court assumed, or necessarily assumed, viewed in the light most favorable to the nonmoving party. For example, in Wallace v. City of Alexander, Ark., 843 F.3d 763 (8th Cir. 2016), an officer shot a suspect in the back at or near her police vehicle during an arrest and claimed the shooting was unintentional. Id. at 766. The district court held that a material fact remained in dispute as to whether the officer intended to shoot the suspect and denied summary judgment as to the officer. Id. On appeal in Wallace, this court held it lacked jurisdiction to review the factual issue regarding intent, but went on to conduct the

qualified immunity analysis, reviewing the purely legal arguments presented in light of the undisputed or assumed facts.  Id. at 766-67.

The defending officer in Wallace additionally briefed and argued that even *if* she intentionally shot the suspect, her conduct did not violate his Fourth Amendment rights, a purely legal issue this court reviewed.  Id. at 767; see also White v. Pauly, 137 S. Ct. 548, 550-52 (2017) (exercising jurisdiction in an appeal from the denial of qualified immunity to decide the purely legal issue of whether an officer violated clearly established law and reiterating that the legal inquiry must be particularized to the facts of the case, accepting as true the plaintiffs' version of the facts advanced below); Mullenix v. Luna, 136 S. Ct. 305, 308-11 (2015) (reviewing a denial of qualified immunity, discussing the legal question of whether the violative nature of particular conduct is clearly established, based upon the specific facts undisputed in the record and viewed favorably to the nonmoving party); Jackson, 866 F.3d at 974, 976-77 (exercising jurisdiction in an interlocutory appeal from the denial of qualified immunity, relying upon undisputed facts and facts viewed most favorably to the plaintiff, to determine whether the plaintiff produced evidence from which a jury could find the defendant's actions constituted excessive force in violation of the Cruel and Unusual Punishment Clause); Ellison, 796 F.3d at 914-17 (exercising jurisdiction in an interlocutory appeal from an order denying qualified immunity to decide the purely legal issue whether the facts assumed by the district court entitled the officers to qualified immunity in an excessive force claim in the shooting death of the victim, and refusing to accept the contradictory facts offered by the officers because it would require the court to examine a matter over which it lacked jurisdiction); Walton v. Dawson, 752 F.3d 1109, 1116 (8th Cir. 2014) (exercising jurisdiction in an appeal from the denial of qualified immunity at the summary judgment stage where the officials argued that, accepting the district court's factual findings as true, the court can decide the purely legal issue of a clearly established violation of federal law); Kahle v. Leonard, 477 F.3d 544, 549-50 (8th Cir. 2007) (exercising jurisdiction in an appeal from the denial of qualified immunity but careful to note that there was no

jurisdiction to review issues related to whether an actor actually committed the act of which he was accused).

Unlike Wallace and other cases where this court exercised jurisdiction, what is at issue here are the facts themselves. The officers here acknowledge that the material issue is whether Officers Peterson and Meath reasonably believed that Franklin posed a threat of serious bodily harm or death. To answer that question the officers argue that the primary facts relied upon by the district court to deny qualified immunity are either immaterial or blatantly contradicted by the record. Both claims involve wholly factual issues we are without jurisdiction to review. Ellison, 796 F.3d at 916 (concluding that an appellate court cannot accept the contention offered by a defending officer because her advanced theory was premised on a set of facts not assumed by the district court). These officers do not argue that even if inferences are made in the estate's favor the use of deadly force was reasonable in this circumstance, but rather they argue the inferences raised by the estate from the evidence presented are not plausible–a factual dispute.[3] "The Supreme Court made clear [in Johnson that] we must eschew fact-intensive '[W]e didn't do it!' defenses and confine appellate review to 'neat abstract issues of law.'" Heartland Acad. Cmty. Church v. Waddle, 595 F.3d 798, 807 (8th Cir. 2010) (alteration in original) (quoting Johnson, 515 U.S. at 316-17).

_____

[3]We are bound by the Supreme Court's holding in Johnson on this factual issue. 515 U.S. at 313. The officers reference Williams v. Holley, 764 F.3d 976 (8th Cir. 2014) for the proposition that not only do we have jurisdiction to conduct a review on the merits of the claim, but physical evidence is lacking in this case, thus defeating any claim of a factual dispute. Williams did not address the jurisdictional issue, however, and we are not bound by its analysis to the extent it contradicts Johnson. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." Webster v. Fall, 266 U.S. 507, 511 (1925).

The district court did not make any legal determinations based upon facts viewed in the light most favorable to the estate, it merely held that the factual dispute at this stage prevents such an analysis. Whether each officer reasonably believed Franklin posed a sufficient threat depends on what occurred–a determination the district court held it could not make based on the evidence presented thus far. Ngo v. Storlie, 495 F.3d 597, 601 (8th Cir. 2007) ("A denial of summary judgment based on qualified immunity is immediately appealable [only] to the extent the appellant seeks review of the purely legal determinations made by the district court." (quoting Henderson v. Munn, 439 F.3d 497, 501 (8th Cir. 2006)). The district court's basic conclusion that "it is not clear what happened or what the parties will prove" is not appealable, as it is not a final order. Johnson, 515 U.S. at 313.

While we have jurisdiction to determine whether conduct the district court deemed sufficiently supported for purposes of summary judgment constitutes a violation of clearly established law, we lack jurisdiction to determine whether the evidence could support a finding that particular conduct occurred at all. Behrens v. Pelletier, 516 U.S. 299, 313 (1996); Johnson, 515 U.S. at 313-18. It is the latter situation we find ourselves in today. There are no facts the district court necessarily assumed that would allow us to conduct a legal analysis, or at least none advanced by the officers.[4] The factual arguments made by the officers on appeal regarding materiality and sufficiency should be made to a jury and do not run to a legal issue on appeal. Accordingly, under Johnson, qualified immunity does not prevent suit here because the precise question for trial is the factual question, an issue which is inseparable from, and necessarily informs, the legal one. Johnson, 515 U.S. at 314-

---

[4]This holds true, also, for the appeal of the denial of summary judgment on the state law wrongful death claim. The district court denied summary judgment on the state law claim given the factual disputes. However, having determined we lack jurisdiction on the excessive force claim, we decline to exercise jurisdiction over this state law claim. See Kincade v. City of Blue Springs, Mo., 64 F.3d 389, 394 (th Cir. 1995).

18. Just as in Johnson, the district court determined that the summary judgment record raised a genuine issue of fact concerning whether the officers faced a threat of bodily injury sufficient to support the use of deadly force. Thus, the court's determination was not a final decision. Id. at 313.

## III.  CONCLUSION

We dismiss the appeal for lack of jurisdiction.

LOKEN, Circuit Judge, dissenting.

I respectfully dissent. When reviewing an interlocutory appeal from the denial of qualified immunity, we have jurisdiction to determine whether "a given set of facts violates clearly established law." Johnson v. Jones 515 U.S. 304, 319 (1995). In conducting this review, "the court of appeals can simply take, as given, the facts that the district court assumed when it denied summary judgment for that (purely legal) reason." Id.

In White v. Pauly, a recent case involving a police officer's use of deadly force, the Supreme Court in reversing the denial of qualified immunity observed:

> Today, it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.' As this Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case. . . . [The Court of Appeals] failed to identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment.

137 S. Ct. 548, 552 (2017). In Mullenix v. Luna, another deadly force case, the Court reversed the denial of qualified immunity, explaining: "The relevant inquiry is whether existing precedent placed the conclusion that [the officer] acted unreasonably

-12-

in these circumstances 'beyond debate.' The general principle that deadly force requires a sufficient threat hardly settles this matter." 136 S. Ct. 305, 309 (2015).

In this case, it is uncontroverted that police officers cornered Walter Franklin hiding in the basement of a home he broke into while fleeing the police. Franklin refused to surrender, and a violent struggle ensued. Franklin grabbed an officer's gun and fired, wounding two officers. Officer Durand continued to struggle with Franklin and yelled, "he's got a gun." Officers Peterson and Meath fired their handguns, mortally wounding Franklin.

In denying qualified immunity, the district court stated the general principle that it is clearly established a police officer may not use deadly force unless the suspect poses a significant threat of death or serious physical injury to the officer or others. The court then reasoned:

> While it is certainly true that Officers Peterson and Meath were faced with a situation that posed a significant threat of death or serious physical injury to them or others, a factual dispute exists over whether such a situation was present at the time when the officers used deadly force against Franklin.

The court's basis for that factual dispute? The "Gaines video," filmed from across the street; a proposed expert's opinion that the video established a twenty- to seventy-second gap between the first shots and the shots that killed Franklin; and the fact that no blood was found on Officer Durand's MP5 when officers testified that Durand and Franklin were struggling for the gun when they shot Franklin.

In my view, accepting as true the alleged seventy-second gap between the shots that wounded two officers and the shots that killed Franklin, and the lack of blood on Durand's MP5, there is no existing precedent establishing "beyond debate" that

Officers Peterson and Meath acted unreasonably in using deadly force. Indeed, numerous Eighth Circuit cases have held that officers acted in an objectively reasonable manner when they employed deadly force in similar situations. For example, in Aipperspach v. McInerney, 766 F.3d 803, 807 (8th Cir. 2014), we upheld the grant of qualified immunity for the use of deadly force, explaining:

> The responding officers were confronted with a suspect who held what appeared to be a handgun, refused repeated commands to drop the gun, pointed it once at [an officer], and then waved it in the direction of officers deployed along the ridge line in an action they perceived as menacing.

In Aipperspach, the gun turned out to be a toy gun, and a video filmed from an overhead news helicopter showed the suspect making movements that might have been an attempt to surrender or an indication that he had lost his balance, rather than threats to shoot at the officers. Id. at 805-06. But the video did not clearly contradict the officers' version of the incident and therefore "shed no material light" on whether the officers who used deadly force reasonably feared for their lives or the lives of fellow officers. Id. at 808. Here, of course, the officers were not dealing with a suspect who was threatening serious injury. Two officers had already been shot.

On this record, I conclude the district court erred in failing to rely on Supreme Court and Eighth Circuit precedents demonstrating that the alleged unreasonable use of deadly force was not beyond debate. Therefore, I would reverse the denial of qualified immunity to Officers Peterson and Meath.

———————————————