# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3003

_____

| | | |
|---|---|---|
| Charles E. Sisney, | * | |
| | * | |
| Plaintiff/Appellant, | * | |
| | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Tim Reisch, Secretary of Corrections | * | |
| for South Dakota;  Douglas L. Weber, | * | |
| Chief Warden for the Department of | * | |
| Corrections of South Dakota; Dennis | * | |
| Block, Associate Warden for the | * | |
| South Dakota State Penitentiary;  and | * | |
| Jennifer Wagner, a/k/a Jennifer Lane, | * | |
| Cultural Activities Coordinator for | * | |
| the South Dakota State Penitentiary, | * | |
| | * | |
| Defendants/Appellees. | * | |

_____

Submitted: October 20, 2011
Filed: March 19, 2012

_____

Before RILEY, Chief Judge, SHEPHERD, Circuit Judge, and WEBBER,[1] District Judge.

_____

WEBBER, District Judge.

_____

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri, sitting by designation.

Charles E. Sisney is incarcerated in the South Dakota State Penitentiary ("SDSP"), where he practices the Jewish faith. In 2003, Sisney filed suit claiming certain SDSP Officials violated his First Amendment free exercise rights by denying his requests to erect and eat his meals within a succah[2] in the SDSP recreation yard.[3] Sisney sued the Officials in their individual capacities and he sought to recover monetary damages. The district court[4] granted summary judgment to the Officials. *Sisney v. Reisch*, 533 F. Supp. 2d 952 (D.S.D. 2008). First, the district court ruled that the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(e), barred Sisney from recovering compensatory damages because his suit contained no allegation of physical injury. Next, the district court ruled that the Officials were entitled to qualified immunity. Neither of these rulings was at issue in the interlocutory appeal we previously heard in this case. *Van Wyhe v. Reisch*, 581 F.3d 639 (8th Cir. 2009). Sisney now appeals both rulings. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

I.

In 2003, Sisney wished to celebrate the Jewish holiday feast of Sukkot by erecting a succah in the SDSP recreation yard. "Sukkot is a Jewish religious festival of thanksgiving celebrated originally as an autumn harvest festival that is

[2]As will be discussed below, a succah is a small three-sided tent or booth used during observance of the Jewish festival of Sukkot.

[3]Sisney's suit also contained numerous other constitutional and statutory claims, including claims under Section 3 of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc-1(a). These claims have all been either dismissed or settled, and they are not at issue in this appeal. In addition, we are informed by the Officials that under the parties' settlement, Sisney may now purchase and use a succah, subject to certain safety and security requirements.

[4]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota.

commemorative of the temporary shelters of the Jews during their wandering in the wilderness." *Van Wyhe*, 581 F.3d at 656 n.7 (internal quotations and citations omitted). A succah is a small three-sided tent or booth that is used as a residence or eating place during observance of Sukkot. *Id*. at 645. Because Sisney did not own a succah, he sought to use one that had been donated by Jewish inmates incarcerated at a different South Dakota state prison facility. The donated succah consisted of a metal frame and poles that were covered on three sides by a canvas tarp. This succah was a temporary structure and was large enough to accommodate only one person.

SDSP regulations required inmates to obtain official approval of religious activity requests by submitting a form entitled "Project Application." In a project application submitted on June 17, 2003, Sisney requested permission to erect the donated succah in the SDSP prison yard and to eat his meals inside that succah. In the alternative, Sisney requested that he be allowed extra time in the recreation yard at sundown to recite a special benediction. Sisney asserts he included this alternative request because he had been informed, prior to submitting the project application, that his succah request would be denied. Sisney submitted project applications containing similar succah requests on August 9, 2004, on September 12, 2005, and in 2006.

Each of Sisney's applications was denied, on grounds that SDSP policy prohibited inmate-to-inmate property transfers and that the proposals presented safety and security issues. Sisney then filed suit pursuant to 42 U.S.C. § 1983, alleging each denial was a violation of his First Amendment free exercise rights. As noted, Sisney sued the Officials in their individual capacities seeking monetary damages.

The Officials moved for summary judgment, based on both the merits and the defense of qualified immunity. The district court first ruled that because Sisney's claims contained no allegation of physical injury, § 1997e(e) of the PLRA barred him from recovering compensatory damages. *Sisney*, 533 F. Supp. 2d at 986. Next, the district court ruled that while an inmate alleging First Amendment violations could

recover punitive damages consistent with § 1997e(e), there was no basis in the record for awarding such damages to Sisney. *Id.* at 986-87. Sisney was therefore limited to recovering nominal damages. Finally, the district court ruled that the Officials were entitled to qualified immunity, because Sisney had failed to cite "any case law that is similar enough to the denial of the use of a Sukkot Booth to find that a reasonable official would have understood such a denial violated Sisney's First Amendment rights to exercise his religion." *Id.* at 989. Accordingly, the district court granted summary judgment in favor of the Officials. *Id.*

Sisney now raises two points on appeal: (1) whether § 1997e(e) of the PLRA bars him from recovering compensatory damages; and (2) whether the Officials are entitled to qualified immunity.

## II.
### A. Section 1997e(e) of the PLRA

In his first point on appeal, Sisney appeals the district court's entry of summary judgment on his pleas for compensatory damages.[5] The district court ruled that because Sisney's free exercise claims contained no allegation of physical injury, § 1997e(e) of the PLRA barred him from recovering compensatory damages. *Sisney*, 533 F. Supp. 2d at 986. Section 1997e(e) states as follows:

---

[5]Sisney initially also appealed a distinct but related ruling by the district court: that § 1997e(e) of the PLRA bars him from recovering compensatory damages on his claims that the Officials violated the RLUIPA in their official capacities by denying his succah project applications. *Sisney*, 533 F. Supp. 2d at 973-74. This point is now moot, because in the time since Sisney filed this appeal, the United States Supreme Court has held that "States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA[.]" *Sossamon v. Texas*, 131 S. Ct. 1651, 1663 (2011). Thus, as Sisney concedes in his reply brief, he cannot recover monetary damages on his RLUIPA claim.

**(e) Limitation on recovery.** No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).  In *Royal v. Kautzky*, we held that this statute applies to "all federal actions brought by prisoners," including actions alleging violation of the First Amendment.  375 F.3d 720, 723 (8th Cir. 2004).  As a result, in *Royal* we held that § 1997e(e) prohibited the incarcerated plaintiff from recovering compensatory damages on his First Amendment claim, because that claim contained no allegation of physical injury.  *Id.*  Sisney's suit presents the same situation, and it is therefore clear the district court did not err.

Sisney urges us to reconsider *Royal*'s interpretation of § 1997e(e), relying heavily upon the dissenting opinion in that case.  *See* 375 F.3d at 726-31 (Heaney, J., dissenting).  Sisney argues that § 1997e(e)'s statutory text and legislative history compel the conclusion that Congress never intended the statute to apply to legitimate constitutional claims.  Sisney also points out that the circuit courts are split in their interpretation of 1997e(e). *Compare Royal*, 375 F.3d 720, 723 ("We join the majority, concluding Congress did not intend section 1997e(e) to limit recovery only to a select group of federal actions brought by prisoners. Instead, we read section 1997e(e) as limiting recovery for mental or emotional injury in all federal actions brought by prisoners."), *with Rowe v. Shake*, 196 F.3d 778, 781-82 (7th Cir. 1999) ("A prisoner is entitled to judicial relief for a violation of his First Amendment rights aside from any physical, mental, or emotional injury he may have sustained."), *and Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998) ("The deprivation of First Amendment rights entitles a plaintiff to judicial relief wholly aside from any physical injury he can show, or any mental or emotional injury he may have incurred. Therefore, § 1997e(e) does not apply to First Amendment Claims regardless of the form of relief sought.").

"It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel." *Owsley v. Luebbers*, 281 F.3d 687, 690 (8th Cir. 2002). Therefore, "[e]ven if we found [these arguments] persuasive, we are without the authority to overrule the decisions of a prior panel of this circuit." *United States v. Craddock*, 593 F.3d 699, 702 (8th Cir. 2010). Sisney himself recognizes this barrier and candidly acknowledges he is raising the issue to preserve it for *en banc* review.

## B. Qualified Immunity

In his second point, Sisney appeals the district court's entry of summary judgment on the basis of qualified immunity. "We review a district court's qualified immunity determination on summary judgment de novo." *Davis v. Hall*, 375 F.3d 703, 711 (8th Cir. 2004).

Sisney filed his claims pursuant to 42 U.S.C. § 1983, alleging the Officials violated his First Amendment free exercise rights by denying him use of a succah. Sisney sued the Officials in their individual capacities and sought to recover monetary damages. Section 1983 provides a civil cause of action against any person who, under color of state law, causes a deprivation of the rights, privileges, or immunities secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. In a § 1983 individual-capacity claim, the plaintiff seeks to hold a government official personally liable for actions taken under the color of law. *Clay v. Conlee*, 815 F.2d 1164, 1169 (8th Cir. 1987).

A government official sued in his individual capacity may raise the defense of qualified immunity. *Id.* Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Stepnes v. Ritschel*, 663 F.3d 952, 960 (8th Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). We decide whether a government official is entitled to

qualified immunity by conducting a two-prong inquiry, examining "(1) 'whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right' and (2) whether the constitutional right violated 'was clearly established at the time of defendant's alleged misconduct.'" *Id.* (quoting *Pearson*, 555 U.S. at 232).

The district court did not expressly examine the first prong of this inquiry -- whether Sisney's succah allegations concerned "the deprivation of an actual constitutional right at all." *Sisney*, 533 F. Supp. 2d at 988-89 (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). Instead, the district court's analysis focused on the second prong -- whether the right was clearly established at the time of the alleged violation:

> Sisney has not cited any case law that is similar enough to the denial of the use of a Sukkot Booth to find that a reasonable official would have understood such a denial violated Sisney's First Amendment rights to exercise his religion. Accordingly, the Court finds Defendants are entitled to summary judgment on the individual capacity claims for denial of the use of a Sukkot Booth.

*Id.* at 989. We think it is clear the district court granted qualified immunity because it found Sisney had failed to allege violation of a constitutional right that was clearly established. We therefore find it prudent to begin our qualified immunity analysis at the second prong. *See Pearson*, 555 U.S. at 236 (permitting the courts "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

Sisney makes two arguments in opposition to the district court's ruling. In the first, he argues the district court erred by focusing on whether he had cited case law addressing facts similar to his succah allegations. *See, e.g.*, *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (" . . . officials can still be on notice that their conduct violates

-7-

established law even in novel factual circumstances."); *Lindsey v. City of Orrick*, 491 F.3d 892, 902 (8th Cir. 2007) (stating that *Hope* "changed the clearly established law inquiry from a hunt for prior cases with precisely the same facts to asking whether the official had fair notice her conduct was unconstitutional."). Sisney contends that the standard employed by the district court was unduly narrow, and that district court instead should have inquired "whether the free exercise of religion within a penal setting is a clearly established right," quoting our decision in *Thomas v. Gunter* (*Thomas I*), 32 F.3d 1258, 1261 (8th Cir. 1994).

A reading of *Thomas I* shows that Sisney's argument goes too far. In that case, a prison inmate brought a § 1983 action, alleging prison officials violated his First Amendment free exercise rights by refusing him daily access to the prison's sweat lodge for prayer. *Id.* at 1259. We began by analyzing whether this refusal was a reasonable restriction on the inmate's free exercise rights under *Turner v. Safley*. *Id.* at 1260. We concluded that because the officials had not offered a single non-conclusory penological interest as justification for the refusal, summary judgment in their favor was improper. *Id.* at 1261. Next, we considered whether the officials were entitled to qualified immunity. *Id.* To do so, we reviewed the law of qualified immunity, concluding with the statement upon which Sisney relies here: "The proper inquiry in the present case, therefore, is whether the free exercise of religion within a penal setting is a clearly established right." *Id.* We then wrote that Supreme Court precedent had clearly established "that prison officials may not deny an inmate 'a *reasonable* opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" *Id.* (quoting *Cruz v. Beto*, 405 U.S. 319, 322 (1972)) (emphasis added). Because the prison officials had not proffered any valid reasons as justification for their refusal, we could not determine whether "they acted *reasonably* in denying Mr. Thomas daily access to the sweat lodge for prayer" and therefore, we remanded to the district court. *Id.* (emphasis added).

As this reading makes clear, the key issue considered, in *Thomas I*, was the fact-bound question of whether there was "a rational relationship . . . between legitimate penological interests and the denial of even brief access to the sweat lodge[.]" *Id*. The subsequent history of that case confirms this conclusion. *See Thomas v. Gunter* (*Thomas II*), 103 F.3d 700, 703 (8th Cir. 1997) (holding "defendants' denial of plaintiff's initial request for daily and extended access on weekday afternoons to the sweat lodge was rationally related to legitimate penological interests."). *Thomas I* did not enunciate a general legal rule to be applied in qualified immunity analysis, and thus, the district court here was under no obligation to adhere precisely to the language of that case.

Sisney's second argument is that the right to use a succah in religious worship has been clearly established. As the Supreme Court has explained, the purpose of qualified immunity is to ensure government officials "are on notice their conduct is unlawful." *Hope*, 536 U.S. at 739 (quotation omitted). Qualified immunity thus protects officials from civil monetary liability, unless they violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson*, 555 U.S. at 231. "Whether the controlling legal principle has been clearly established is not to be determined at the most general level of legal abstraction[.]" *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998). Instead, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Thus, the "salient question" for the court to ask is whether the state of the law at the time gave the officials "fair warning" their conduct was unlawful. *Hope*, 536 U.S. at 741. We answer this question by examining the "specific actions" of the official. *Norman v. Schuetzle*, 585 F.3d 1097, 1109 (8th Cir. 2009).

Sisney argues that the right to a succah was clearly established by relying upon *Wares v. VanBebber*, 319 F. Supp. 2d 1237 (D. Kan. 2004):

Here, Mr. Wares established a genuine issue of material fact that defendants refused to make reasonable meal and dining accommodations during Sukkot (by providing him with a Sukkah or by failing to properly secure the Sukkah), and that this decision was not founded upon legitimate penological interests. The case law discussed above gave defendants fair notice that such conduct would violate Mr. Wares' rights under the First Amendment.

*Id.* at 1252. Sisney's reliance upon *Wares* is unavailing. As an initial matter, *Wares* was decided on May 28, 2004. Thus, that decision could not give the Officials notice that denying Sisney's 2003 project application was unlawful.

Sisney fares no better with respect to the denial of his 2004, 2005, and 2006 project applications. *Wares* relied upon the binding decision of *LaFevers v. Saffle*, writing that "since 1991, the Tenth Circuit has held that the First Amendment guarantees prisoners the right to reasonable dietary and meal accommodations that comport with their religious beliefs." *Id.* (citing *LaFevers v. Saffle*, 936 F.2d 1117, 1119 (10th Cir. 1991)). In *LaFevers*, the prisons officials refused to provide a vegetarian diet to an inmate who practiced as a Seventh Day Adventist. 936 F.2d at 1118. Thus, as the Tenth Circuit recognized, that case concerned an inmate who requested a diet consistent with his religious beliefs. *Id.* at 1119 ("[A]n individual's genuine and sincere belief in religious dietary practices warrants constitutional protection."). *Wares* also relied upon a case in which prison officials delivered meals to the prison cell of a Muslim inmate at times inconsistent with his fasts during the holy month of Ramadan. *Makin v. Colo. Dep't of Corrs.*, 183 F.3d 1205, 1208 (10th Cir. 1999). *Makin* thus concerned accommodating an inmate's religious beliefs by providing him meals in his cell at particular times. Other cases *Wares* cites for support do not concern religious dietary or meal accommodations at all, but instead address an inmate's free exercise rights in other contexts. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 345 (1987) (work schedule preventing Muslim inmates from attending Jumu'ah, a weekly congregational prayer service); *Mosier v. Maynard*, 937

F.2d 1521, 1522 (10th Cir. 1991) (prison grooming code requiring inmate to cut his hair in violation of tenets of Native American religion).

Like the Tenth Circuit, we have also held that under the First Amendment, "prison inmates are entitled to reasonable accommodation of their religious dietary needs." *Love v. Reed*, 216 F.3d 682, 689 (8th Cir. 2000). Our cases have focused primarily on the dietary accommodations an inmate may receive based on his religious beliefs. *See, e.g.*, *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815 (8th Cir. 2008) (Muslim inmate did not present "sufficient evidence from which a reasonable factfinder could conclude that his right to exercise his religion was substantially burdened" by prison officials' failure to provide him a *halal* diet); *Kind v. Frank*, 329 F.3d 979, 981 (8th Cir. 2003) ("It is not well-established, however, that Muslims must be offered a meat-free diet."); *Hayes v. Long*, 72 F.3d 70, 74 (8th Cir. 1995) (clearly established that "Muslim inmates have the right to avoid contact with pork or with any food that has been contaminated with pork."); *Toler v. Leopold*, No. 2:05CV82 JCH, 2008 WL 926533 at *5 (E.D. Mo. April 3, 2008) ("The Court therefore finds that Defendants violated Toler's right to freedom of religion when they denied him reasonable access to a Kosher diet."). We have also decided one case in which an inmate requested that meals be provided to him in his cell at particular times to accommodate his religious practices. *See Love*, 216 F.3d at 690 (prison officials substantially burdened inmate's free exercise rights, where officials refused inmate's request for sandwich fixings to be provided in his cell on Saturdays so as to avoid disruption of his observance of the Sabbath).

In his project applications, Sisney did not request a particular diet based on his religious beliefs. He also did not request to be served meals in his cell at particular times to facilitate his religious practices. Instead, Sisney sought to consume his meals within a succah in the outdoor SDSP recreation yard. It is now well-established that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). But in order

for any official to be on "fair notice," *id.* at 739, "[t]he contours of [a] right must be sufficiently clear" that the unlawfulness of the challenged conduct was apparent. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Under this standard, we cannot agree that it was apparent the contours of a prison inmate's right to reasonable dietary and meal accommodations extended to the use of a succah. As a result, the SDSP Officials did not have fair notice it was unlawful to deny Sisney's project applications. We therefore conclude the district court did not err in granting these Officials qualified immunity on Sisney's claims for denial of his 2004, 2005, and 2006 project applications.

## III.

For the foregoing reasons, we affirm the judgment of the district court.