# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-3279

_____

Jacquelyn Wallace, Individually and as Administratrix and Personal
Representative for the Estate of Carleton J. Wallace

*Plaintiff - Appellee*

v.

City of Alexander, Arkansas; Horace Walters

*Defendant*s

Nancy Cummings, In her official and individual capacity

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: September 22, 2016
Filed: December 9, 2016

_____

Before RILEY, Chief Judge, MURPHY and SMITH, Circuit Judges.

_____

MURPHY, Circuit Judge.

Carleton J. Wallace was fatally shot by a police officer in Alexander, Arkansas. Wallace's estate brought this action under 42 U.S.C. § 1983 against that officer, the chief of police, and the city, alleging excessive force in violation of the Fourth Amendment. The district court[1] denied the officer summary judgment on the basis of qualified immunity, but granted summary judgment to the chief of police and the city. The officer appeals, and we affirm.

I.

In September 2012 officer Nancy Cummings observed Carleton Wallace obstructing traffic as he walked down the street in Alexander, Arkansas. Cummings was on patrol by herself, but her 25 year old daughter, Angel Johnson, was also in the patrol car on an approved ride along. Cummings stopped to investigate, got out of her patrol car, and told Wallace to take his hands out of his pockets. As Wallace did so, he also removed a gun from his waistband. Cummings pulled out her own firearm and told Wallace to drop his. Wallace tossed his gun out of reach into the woods at the side of the road.

Cummings subsequently attempted to seize and handcuff Wallace. She told Wallace to get on the ground and he failed to respond, although he did not move toward his gun or act in a threatening manner. With her gun drawn, Cummings approached Wallace, grabbed his arm, and took him to her patrol car where he put his hands on the car hood. According to Cummings she continued to hold her gun with one hand, but two eyewitnesses reported that she had either placed her gun on the car hood or in its holster. The parties agree that after Cummings grabbed Wallace's arm to handcuff him, her gun discharged as he attempted to break free of her grip. Wallace was shot in the back as he moved away from Cummings and her patrol car.

---

[1]The Honorable Billy Roy Wilson, United States District Judge for the Eastern District of Arkansas.

According to Cummings, her gun had fired when Wallace pushed her off balance. Two eyewitnesses reported, however, that she had grabbed her gun with both hands and shot Wallace in the back after he turned away from the patrol car. Wallace continued to move away from Cummings after he was shot, taking a few steps and then falling down. From there he crawled to the side of the road where he died. Investigators concluded that his first blood drop had fallen on the ground three feet eight inches in front of Cummings' patrol car. The medical examiner found stippling, or gunpowder particles, surrounding the hole where the bullet entered Wallace's body. According to the examiner, the stippling pattern was consistent with a close range gunshot wound. The medical examiner also found amphetamines, benzodiazepines, and cannabinoids in Wallace's system.

Wallace's estate brought this § 1983 action against Cummings, police chief Horace Walters, and the city of Alexander. The estate alleged that the defendants violated Wallace's Fourth and Fourteenth Amendment rights to be free from excessive force. The estate also alleged violations of Arkansas law. The defendants moved for summary judgment, and Cummings argued that she was entitled to qualified immunity because she had shot Wallace unintentionally. In support of her argument she provided an expert report concluding that her gun had discharged three to four inches from Wallace's back. The district court granted summary judgment to Walters and the city of Alexander, but not to Cummings because "a material fact remain[ed] in dispute as to whether [she] intended to shoot Mr. Wallace." Cummings appeals.

II.

The estate argues that our court lacks jurisdiction over this interlocutory appeal. Appellate courts have limited jurisdiction over interlocutory appeals brought by public officials asserting qualified immunity. Johnson v. Jones, 515 U.S. 304, 313 (1995). Orders denying a public official qualified immunity may be appealed under

the collateral order doctrine, but only "to the extent that [the appeal] turns on an issue of law." Thompson v. Murray, 800 F.3d 979, 982 (8th Cir. 2015) (quoting Mitchell v. Forsyth, 472 U.S. 511, 530 (1985)); see also 28 U.S.C. § 1291. Therefore, issues such as "the existence, or nonexistence, of a triable issue of fact" are not reviewable. Johnson, 515 U.S. at 316.

Cummings raises both legal and factual issues on appeal. We have jurisdiction to review her purely legal arguments, such as whether the undisputed or assumed facts would establish a constitutional violation and whether the right at issue was clearly established. See Ngo v. Storlie, 495 F.3d 597, 601 (8th Cir. 2007). Cummings also challenges the district court's determination that the record presents a genuine dispute as to whether she intentionally shot Wallace. Like most questions of intent, Cummings' argument that there was insufficient evidence that she intended to shoot Wallace is a factual one that we lack jurisdiction to review on interlocutory appeal. Johnson, 515 U.S. at 316. There is one exception to such a jurisdictional limitation on our review: we may reject the district court's factual findings to the extent that they are "blatantly contradicted by the record." Walton v. Dawson, 752 F.3d 1109, 1116 (8th Cir. 2014) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). This exception is to be narrowly construed to prevent interlocutory appeals in constitutional tort actions from creating "additional, and unnecessary, appellate court work." See Johnson, 515 U.S. at 309, 315–16.

The evidence Cummings has cited does not rise to the level of "blatantly contradict[ing]" the district court's determination that there is a material dispute as to whether she intentionally shot Wallace. Cummings relies on two pieces of physical evidence to bolster her argument that she unintentionally shot Wallace: the location of his first blood drop and the stippling pattern on his back.[2] Neither piece of

_____

[2] We do not address the estate's objections to the expert evidence on interlocutory appeal as it falls beyond the reach of our limited review. See Mohawk

-4-

physical evidence is "entirely inconsistent with" the estate's theory of the case, however. See Born v Osendorf, 329 F.2d 669, 672 (8th Cir. 1964). The physical evidence supports Cummings' argument that she shot Wallace at close range, but it is plausible that this occurred only after he had turned around and begun to move away. Wallace may also have been moving slowly because of the amphetamines, benzodiazepines, and cannabinoids found in his system by the medical examiner.

Cummings also concedes that she was holding her gun when it discharged, that it contained a safety mechanism, and that it had not malfunctioned. These concessions may suggest that she intentionally applied force to the gun's trigger mechanism, and she thus has not met her heavy burden of establishing that the record blatantly contradicts the district court's factual findings. See Thompson, 800 F.3d at 983 (relying on "common sense" when reviewing the district court's factual findings). At this stage we accept those "findings as true and decide whether those facts, as a 'purely legal issue,' involve a clearly established violation of federal law."[3] Walton, 752 F.3d at 1116 (quoting Johnson, 515 U.S. at 313).

---

Indus., Inc. v. Carpenter, 558 U.S. 100, 107–08 (2009).

[3]Cummings argues that an unintentional shooting would not violate the Fourth Amendment, but we need not address this argument in light of the district court findings from which we assume for the purposes of this appeal that Cummings intentionally shot Wallace. There is a circuit split on whether unintentional conduct can ever lead to Fourth Amendment liability. See Stamps v. Town of Framingham, 813 F.3d 27, 37–39 (1st Cir. 2016) (collecting cases). Our court has thus far declined to reach this issue. See McCoy v. City of Monticello, 342 F.3d 842, 847 n.3 (8th Cir. 2003).

III.


Cummings argues that even if she intentionally shot Wallace, her conduct did not violate Wallace's Fourth Amendment right to be free from unreasonable seizures. We review the district court's denial of summary judgment on the basis of qualified immunity de novo, "viewing the facts in the light most favorable to [the estate] and drawing all reasonable inferences in [the estate's] favor." Nance v. Sammis, 586 F.3d 604, 609 (8th Cir. 2009). A government official is entitled to qualified immunity unless (1) the official violated a plaintiff's constitutional right and (2) that right was clearly established at the time of the violation. Pearson v. Callahan, 555 U.S. 223, 232 (2009). We address each question in turn.


A.


The estate argues that Cummings seized Wallace with excessive deadly force in violation of both the Fourth and Fourteenth Amendments. Claims that an officer seized a person with excessive force "are properly analyzed under the Fourth Amendment's objective reasonableness standard." Graham v. Connor, 490 U.S. 386, 388 (1989) (internal quotation marks omitted). Whether the use of deadly force is reasonable turns on "the totality of the circumstances, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officer or others, and [3] whether the suspect is actively fleeing or resisting arrest." Loch v. City of Litchfield, 689 F.3d 961, 965 (8th Cir. 2012); see Tennessee v. Garner, 471 U.S. 1, 11–12 (1985). Our review of the reasonableness of Cummings' use of deadly force is "constrained by the version of the facts that the district court assumed or likely assumed in reaching its decision." Thompson, 800 F.3d at 983. Here, the district court did not specify which factors were adequately supported by the record, if any. In these circumstances "we must determine which facts [the district court] likely assumed by viewing the record in the light most favorable" to the estate.

Id. Based on the record before the district court, none of the three factors supported Cummings' use of deadly force as a matter of law.

The record does not conclusively demonstrate that Wallace committed the "violent felony" of aggravated assault as alleged by Cummings. See United States v. Graham, 394 Fed. App'x 354, 355 (8th Cir. 2010) (per curiam) (discussing Ark. Code Ann. § 5-13-204). In Arkansas, a person may commit felony aggravated assault by displaying "a firearm in such a manner that creates a substantial danger of death or serious physical injury to another person." Ark. Code Ann. § 5-13-204(a)(2). Merely drawing a gun, however, without "presenting or pointing it at another has been held not to constitute an [aggravated] assault." Wooten v. State, 799 S.W.2d 560, 561 (Ark. Ct. App. 1990) (internal quotation marks omitted).

Viewing the evidence in the light most favorable to the estate, Wallace drew his gun without "pointing it" at Cummings. Cummings told an investigator immediately after the incident that Wallace had "grabbed the gun like he was going to point [it] towards [her]." Johnson signed a statement stating that Wallace had been facing Cummings with his gun pointed in her general direction. It was only later that both Cummings and Johnson said that Wallace had pointed his gun directly at Cummings as he removed it from his waistband. A fact finder could credit their first statements over the subsequent versions and conclude that Wallace had not committed a violent felony before he himself was seized with deadly force.

The record also does not establish as a matter of law that Wallace posed a significant immediate threat to the safety of Cummings or other bystanders. To determine whether a person is an immediate threat, an officer may consider both the person's present and prior conduct. See Garner, 471 U.S. at 11–12. At the time of the seizure, Wallace had thrown his gun out of reach and had "made no move toward a weapon or what would appear to be a weapon." See Ngo, 495 F.3d at 603. Two

eyewitnesses had also reported that Cummings had not shot Wallace until he was facing away from her which was supported by the location of his gunshot wound. A reasonable fact finder could thus conclude that Wallace was fleeing arrest at the time that he was shot rather than engaging in a "hostile and intense" physical struggle. See Parks v. Pomeroy, 387 F.3d 949, 957–58 (8th Cir. 2004). Wallace's conduct prior to the seizure also does not necessarily support Cummings' use of deadly force. As discussed above, a reasonable fact finder could conclude that Wallace had not committed the violent felony of aggravated assault.

Finally, the use of deadly force was not justified by the third factor alone. Both the Supreme Court and our court have repeatedly stated that "[a]n officer may not use deadly force against a fleeing suspect <u>unless</u> the suspect poses an <u>immediate and significant threat</u> of serious injury or death to the officer or to bystanders." <u>Thompson</u>, 800 F.3d at 983 (emphasis added); <u>see</u> <u>Garner</u>, 471 U.S. at 11–12. Given the record before the district court, a fact finder could reasonably conclude that Wallace no longer posed a significant threat after he had discarded the gun and begun to flee. Officers may not seize such "unarmed, nondangerous suspect[s] by shooting [them] dead." <u>Garner</u>, 471 U.S. at 11. Considering the totality of the circumstances, in particular the three factors discussed above, the record does not establish that Cummings' use of deadly force was reasonable as a matter of law.

B.

Cummings also argues that even if she unreasonably seized Wallace with deadly force, the contours of that Fourth Amendment right were not clearly established given the particular facts of this case. We disagree. A right is clearly established if, at the time of the challenged conduct, "every reasonable official would have understood that what he is doing violates that right." <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 741 (2011) (citation omitted) (internal quotation marks omitted). That

inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting Brosseau v. Haugen, 543 U.S. 194, 198 (2004)). There does not need to be "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Al-Kidd, 563 U.S. at 741.

Since the Supreme Court decided Tennesse v. Garner in 1985, it has been clearly established "that the use of deadly force against a fleeing suspect who does not pose a significant threat of death or serious physical injury to the officer or others is not permitted." Moore v. Indehar, 514 F.3d 756, 763 (8th Cir. 2008). Further, such a threat must be "immediate." Garner, 471 U.S. at 11. We have thus concluded that an officer violated Garner by using deadly force to seize an individual who did not possess a weapon and was attempting to flee the scene of a potentially violent crime. See, e.g., Moore, 514 F.3d at 763. Here, viewing the evidence in the light most favorable to the estate, Wallace did not pose an immediate and significant threat of serious injury to Cummings or bystanders because he may not have committed any violent felony, the physical struggle was minimal, and he was not "holding a firearm" when he attempted to flee. See id. Viewing the facts in the light most favorable to the estate, a reasonable fact finder could thus conclude that the seizure violated a clearly established constitutional right.

IV.

Accordingly, the district court's order denying Cummings summary judgment on the basis of qualified immunity is affirmed.

_____