# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-3157

_____

Florine K. Ching, as Trustee for the Heirs and Next of Kin of Travis Matthew Jordan, Decedent

*Plaintiff - Appellee*

v.

City of Minneapolis

*Defendant*

Ofc. Neal Walsh, in his individual and official capacity

*Defendant - Appellant*

Ofc. Ryan Keyes and Police Chief Medaria Arradondo, in their individual and official capacities

*Defendant*s

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: June 15, 2023
Filed: July 13, 2023

_____

Before LOKEN, ERICKSON, and KOBES, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Florine Ching brought this 42 U.S.C. § 1983 action after her son Travis Jordan was shot and killed by City of Minneapolis Police Officer Neal Walsh. The district court found Walsh was entitled to qualified immunity as to his initial use of deadly force but not the continued use of force after Jordan dropped his knife and had fallen to the ground. In this interlocutory appeal, Walsh asserts he is entitled to qualified immunity as to the entire encounter, which lasted a total of about two seconds. We reverse the denial of qualified immunity.

## I.    BACKGROUND

On November 9, 2018, law enforcement was dispatched to Jordan's mother's residence following a report that Jordan was present at the home, suicidal, emotionally disturbed, and interested in acquiring a gun. When the officers made contact with Jordan who was inside the house, Jordan indicated he did not want to speak with the officers and told them to leave. A few minutes later, Jordan moved through the house, entering an enclosed front porch with a knife. The officers drew their weapons and repeatedly commanded Jordan to drop the knife. Jordan, undeterred, opened the front door, stepped into the doorway, and repeatedly shouted, "Let's do this" and, "Come on, just do it."

Ignoring the officers' commands to drop the knife, Jordan came outside and began to deliberately walk toward Walsh while shouting, "Let's do this" and, "Just do it." Jordan walked toward Walsh with the knife at his side. As Jordan approached the officers, they continued to order Jordan to drop the knife. As the distance between Jordan and Walsh closed, Walsh began to back away from Jordan. Jordan kept coming and continued to refuse to stop or drop the knife. When Jordan was approximately six to twelve feet from Walsh, Walsh began shooting at Jordan. He shot without pause seven times over the course of approximately two seconds. In quick succession and without any discernible pause, Walsh fired three shots while

-2-

Jordan was standing and four shots while Jordan was on the ground. Jordan subsequently succumbed to his wounds.

Ching filed this § 1983 action, alleging, among other claims, an excessive force claim against Walsh. Walsh moved for judgment on the pleadings based on qualified immunity. At the urging of Ching, the district court bifurcated the analysis of Walsh's use of force into two segments—the initial use of force while Jordan was walking toward the officer and the continued use of force after Jordan had dropped the knife and fallen to the ground. As to the shooting that lasted no more than two seconds, the district court found Walsh was entitled to qualified immunity with regard to the initial use of force but not as to the continued firing. The district court reasoned that Walsh had sufficient time and situational awareness to adjust his aim downward after Jordan fell to the ground and, based on this determination, concluded a reasonable jury could find Walsh had time to reassess the threat posed by Jordan. Walsh appeals.

## II.    DISCUSSION

Appellate review of the denial of qualified immunity is limited to issues of law. McDaniel v. Neal, 44 F.4th 1085, 1088 (8th Cir. 2022). We review *de novo* the district court's qualified immunity determination. See Lane v. Nading, 927 F.3d 1018, 1022 (8th Cir. 2019).

In a § 1983 action, an officer is entitled to qualified immunity unless: (1) the officer's conduct violated a constitutional right, and (2) that right was clearly established. Manning v. Cotton, 862 F.3d 663, 668 (8th Cir. 2017). An officer violates the Fourth Amendment by using excessive force when conducting a seizure. See White v. Jackson, 865 F.3d 1064, 1074 (8th Cir. 2017). In determining whether an officer has used excessive force, we consider whether the force used was reasonable under the particular circumstances. See id. The use of deadly force is reasonable only if the officer had probable cause to believe the suspect presented "a

threat of serious physical harm to the officer or others." Partridge v. City of Benton, 929 F.3d 562, 565 (8th Cir. 2019).

An officer violates a clearly established right only if a reasonable officer in the same position would understand his conduct violates the right. Dillard v. O'Kelley, 961 F.3d 1048, 1052 (8th Cir. 2020) (en banc). Courts must not "define clearly established law at a high level of generality." Id. (quoting Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018)). In determining whether an officer violated a clearly established right, a court should "look for a controlling case or 'a robust consensus of cases of persuasive authority'" that "involves sufficiently similar facts to squarely govern" the conduct at issue and places the question "beyond debate." Ashcroft v. Al-Kidd, 563 U.S. 731, 741 (2011); Perry v. Adams, 993 F.3d 584, 587 (8th Cir. 2021); Dillard, 961 F.3d at 1052.

As a preliminary matter, Ching asserts we must accept the factual inference, which the district court accepted, that Walsh had sufficient time to reassess the threat Jordan posed after he fell to the ground and dropped the knife. At this stage of the proceedings, we consider the pleadings and the materials "necessarily embraced by the pleadings." LeMay v. United States, 18 F.4th 283, 289 (8th Cir. 2021). Videos of an incident are necessarily embraced by the pleadings, and we will consider the videos here. See id. The jurisdictional limitation on our authority to review a district court's factual findings does not obligate us to accept a version of events that is "blatantly contradicted by the record." Wallace v. City of Alexander, 843 F.3d 763, 767 (8th Cir. 2016); see Ehlers v. City of Rapid City, 846 F.3d 1002, 1010 (8th Cir. 2017).

Our review of the videos of the incident establishes that Walsh never paused during the shooting that lasted less than two seconds, and he continued shooting for only approximately one second after Jordan fell to the ground, dropping the knife. Given the swift and continuous progression of the incident and Walsh's limited time to observe and process the circumstances, a jury could not find Walsh had sufficient time to reassess the threat Jordan presented before he stopped firing.

This situation is unlike the encounter in Roberts v. City of Omaha, 723 F.3d 966, 974 (8th Cir. 2013), where the Court accepted the district court's finding that there was a disputed factual issue as to the objective reasonableness of an officer's actions due to evidence suggesting the officer fired his weapon at the person several times, paused, and fired several more times, possibly shooting the person in the back. Here, the entire encounter lasted less than two seconds and all shots were fired in quick succession with inadequate time or opportunity for a reasonable officer to assess whether the immediate threat had passed.

While mere seconds can be sufficient time for an officer to reassess a threat, see Cole ex rel. Est. of Richards v. Hutchins, 959 F.3d 1127, 1135 (8th Cir. 2020), this Court's precedent at the time of the shooting did not provide Walsh with notice that a single second in a less than two-second encounter was sufficient time for him to reassess the threat Jordan presented. Ching has not presented, and we are not aware of, any case in which a court has bifurcated a shooting when an entire continuous shooting lasted less than two seconds, and the alleged excessive force occurred only one second after the threat was arguably dissipated.

The facts of this case are markedly similar to the facts of Estate of Morgan v. Cook, 686 F.3d 494 (8th Cir. 2012). In Cook, an officer responded to the scene of an intoxicated suspect. 686 F.3d at 495. The officer observed the suspect—who was six to twelve feet from the officer—attempting to conceal a kitchen knife, which was pointed down by his side. Id. at 495-96, 498. The officer twice directed the suspect to drop the knife, and the suspect failed to do so. Id. at 496. The suspect then stood and raised his leg forward as if to take a step in the officer's direction, and the officer shot the suspect. Id. This Court held the officer's decision to shoot at the suspect was objectively reasonable because, among other facts, the suspect was holding a knife, failed to comply with the officer's direction to drop it, began moving toward the officer, and was no more than twelve feet from the officer when the officer began shooting. Id. at 497. Given the similarities to this case, the caselaw did not place "beyond debate" that Walsh could not reasonably believe Jordan presented a sufficient threat to justify the use of deadly force. See Dillard, 961 F.3d

at 1052; see also Kong ex rel. Kong v. City of Burnsville, 960 F.3d 985, 993 (8th Cir. 2020) (noting an officer may use deadly force to stop a person armed with a bladed weapon if the officer reasonably believed the person could kill or seriously injure others). Because, after Jordan posed a threat to Walsh, it was not clearly established that Walsh's continuous shooting, which lasted less than two seconds, violated a constitutional right, Walsh is entitled to qualified immunity.

The parties dispute the significance of Jordan's reported suicidality. Compare Kong, 960 F.3d at 993 (noting mental illness does not reduce the immediate and significant threat a suspect poses), with Partridge, 929 F.3d at 565 (considering the decedent's suicidality when determining no reasonable officer would have believed the decedent presented an immediate threat). Even if Jordan's emotional condition perhaps mitigated the threat he posed to the responding officers, a question we need not reach, this detail does not sufficiently distinguish this case from Cook such that Walsh would have had "fair warning" that his conduct violated a constitutional right. See Sisney v. Reisch, 674 F.3d 839, 845 (8th Cir. 2012).

## III.   CONCLUSION

For the foregoing reasons, we reverse the denial of qualified immunity and remand for entry of judgment in favor of defendants.

_____