# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-1566
_____

Louise Arnold, Adminstrator for the Estate of Roderick McDaniel

*Plaintiff - Appellee*

v.

Officer Charles McClinton, individual and official capacity

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - El Dorado

_____

Submitted: February 13, 2024
Filed: August 14, 2024

_____

Before LOKEN, COLLOTON,[1] and KELLY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Louise Arnold, as administrator of Roderick McDaniel's estate, brought this action under 42 U.S.C. § 1983 and the Arkansas Civil Rights Act (ACRA) against Deputy Charles McClinton of the Columbia County Sheriff's Office, Columbia

_____

[1]Judge Colloton became chief judge of the circuit on March 11, 2024. <u>See</u> 28 U.S.C. § 45(a)(1).

County Sheriff Mike Loe, and Columbia County, alleging that Deputy McClinton used excessive force when he shot and killed McDaniel outside an apartment complex in Magnolia, Arkansas. Deputy McClinton appeals the district court's interlocutory order denying his motion for summary judgment based on qualified immunity. We have jurisdiction to review *de novo* interlocutory orders denying qualified immunity to the extent the appeal turns on issues of law. Wallace v. City of Alexander, 843 F.3d 763, 766-67 (8th Cir. 2016) (citations omitted). Reviewing the denial of qualified immunity *de novo*, we reverse.

## I.

The summary judgment record includes Statements of Material Facts by the parties supporting and opposing summary judgment, plus video of a significant part of the encounter between McDaniel and Deputy McClinton captured by McClinton's body camera and dashboard camera. Arnold's Statement of Material Facts states, with respect to nearly every fact statement in Deputy McClinton's Statement, "subject to genuine dispute." This will not do. Rule 56(c)(1) of the Federal Rules of Civil Procedure provides that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion" with evidence, or with pleadings such as interrogatory answers and admissions. Failing to properly support the assertion permits the court "to consider the fact undisputed for purposes of the motion." Rule 56(e)(2). A party opposing summary judgment may not rely on her pleadings or "merely assert[] that the jury might, and legally could, disbelieve the defendant's denial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). We will consider undisputed all facts in Deputy McClinton's Statement that are not contradicted or disputed in the video or by other evidence that supports Arnold's naked assertion that they are "subject to genuine dispute."

A Columbia County resident was shot and killed on November 19, 2018. An eyewitness reported to responding officers, including Deputy McClinton, that a man

named Roderick McDaniel was the shooter and had taken the gun with him as he fled the scene. No gun was recovered at the crime scene. An arrest warrant issued for McDaniel on a charge of first-degree murder. A dispatch advised local officers that the warrant issued and that McDaniel was believed to be driving a white SUV.

While on patrol late the following evening, Deputy McClinton noticed a white SUV idling in a parking space at an apartment complex. McClinton positioned his patrol car several feet behind the SUV, blocking the SUV from backing out of the space. He approached the driver's side door. The SUV's occupant partially rolled down the tinted window. Deputy McClinton asked his name. The man responded, "Roderick McDaniel." McClinton radioed the name to dispatch. McDaniel rolled up the window, gunned the vehicle in reverse, and collided with McClinton's patrol vehicle, just as dispatch was telling McClinton that Roderick McDaniel was "him," the man charged with first-degree murder. McClinton drew his service weapon and ordered McDaniel to stop multiple times. McDaniel "slammed his vehicle into drive and gunned it forward." Deputy McClinton fired a single shot into the driver's side window, hitting McDaniel. The SUV accelerated forward, jumped a curb, traveled through the lawn, reentered the parking lot, and collided with other parked cars. Deputy McClinton and another responding officer found McDaniel deceased in the crashed SUV, with a loaded handgun located "in or around" his hand. Ballistic testing determined that the handgun was used to murder the other person.

The parties dispute several facts about the shooting. Deputy McClinton posits that McDaniel, in a desperate attempt to flee arrest, reversed the SUV, violently colliding with the patrol car, then "gunned" it forward toward Deputy McClinton, who fired believing McDaniel was trying to run him down. Arnold posits that the SUV was still in reverse when Deputy McClinton shot McDaniel, and that Deputy McClinton was never in the direct path of the SUV and was always positioned safely to its side. The video footage does not establish whether the SUV was in reverse or forward drive when Deputy McClinton fired the fatal shot. The video supports

-3-

Arnold's contention that McClinton was standing away from his patrol vehicle when he fired and was not in the path of the SUV.

In denying Deputy McClinton's motion for summary judgment dismissing the § 1983 and ACRA claims against him based on qualified immunity, the district court determined that material factual disputes, particularly whether McDaniel was driving the SUV forward toward Deputy McClinton when he was shot, precluded it from determining as a matter of law whether Deputy McClinton used unconstitutional deadly force when he shot McDaniel. The court concluded that Deputy McClinton was therefore not entitled to summary judgment based on qualified immunity because "it was clearly established that it is unreasonable to use deadly force against a suspect merely for fleeing, even when that flight is via automobile." The court granted summary judgment dismissing all claims against Sheriff Loe and Columbia County.

## II.

"In a § 1983 action, an officer is entitled to qualified immunity unless: (1) the officer's conduct violated a constitutional right, and (2) that right was clearly established." Ching ex rel. Jordan v. City of Minneapolis, 73 F.4th 617, 620 (8th Cir. 2023). We have discretion to choose which of the two elements to address first. See Pearson v. Callahan, 555 U.S. 223, 236 (2009). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." Mullenix v. Luna, 577 U.S. 7, 12 (2015).

"Claims that an officer seized a person with excessive force 'are properly analyzed under the Fourth Amendment's objective reasonableness standard.'" Wallace, 843 F.3d at 768, quoting Graham v. Connor, 490 U.S. 386, 388 (1989). "[A]pprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." Tennessee v. Garner, 471 U.S. 1, 7 (1985). In that seminal case, the victim's father sued a police officer who shot and killed a

-4-

burglary suspect attempting to flee from arrest. The officer had no reason to believe the suspect was armed. Id. at 3-4. The Sixth Circuit held that the officer was entitled to qualified immunity and dismissed the damage action based on a Tennessee statute providing that a police officer, after giving notice of intent to arrest, "may use all the necessary means to effect the arrest" if the person flees or forcibly resists. Id. at 4. The Supreme Court held that the statute was unconstitutional if applied to "nondangerous fleeing suspects" because "[w]here the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." Id. at 11.

In Garner, the Court did not strike the statute down as facially unconstitutional, concluding there were circumstances in which it "would pass constitutional muster." Id. at 12. The Court provided important guidance regarding circumstances in which deadly force would be constitutionally permissible:

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

Id. at 11-12. In determining whether the use of deadly force was objectively reasonable, "[w]e must consider the totality of the circumstances, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether the suspect is actively fleeing or resisting arrest." Loch v. City of Litchfield, 689 F.3d 961, 965 (8th Cir. 2012) (citing Graham, 490 U.S. at 397); see Wallace, 843 F.3d at 768; Capps v. Olson, 780 F.3d 879, 884 (8th Cir. 2015); Aipperspach v. McInerney, 766 F.3d 803, 806 (8th Cir. 2014).

Without referencing the above-quoted guidance from Garner, or even acknowledging that Garner addressed the issue at all, the district court denied Deputy McClinton qualified immunity because whether McDaniel was threatening to run McClinton down by moving the SUV is a disputed fact and the act of fleeing itself does not create an immediate threat to an officer's safety, citing unpublished opinions from the Eastern District of Missouri and the Western District of Arkansas. On appeal, Arnold relies on our statement in Capps that "[t]he use of deadly force against a fleeing suspect who does not pose a significant and immediate threat of serious injury or death to an officer or others is not permitted." 780 F.3d at 886.

McClinton argues the district court erred by employing a standard that ignores a critical portion of the Supreme Court's guidance in Garner -- if "there is probable cause to believe that [the suspect] has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape" of a dangerous fleeing felon, even if the officer using deadly force is not threatened. 471 U.S. at 11-12. We agree. In this situation, "the officer is allowed to infer that the suspect is inherently dangerous by the violent nature of the crime." Ryder v. City of Topeka, 814 F.2d 1412, 1419 (10th Cir. 1987); accord Krueger v. Fuhr, 991 F.2d 435, 438-40 (8th Cir. 1993). As the Supreme Court has explained, the reference in Garner to "necessary to prevent escape" was a reference to the prevention of "serious physical harm either to the officer or others;" when there is probable cause to believe the suspect has committed a crime fitting this description, "his mere being at large poses an inherent danger to society." Scott v. Harris, 550 U.S. 372, 382 & n.9 (2007). Capps (and the cases cited in Capps) did not involve the use of deadly force against a suspect who was wanted for murder and was seized to prevent escape. Indeed, Capps did not even reference the Supreme Court's governing guidance in Garner. Thus, we do not consider these cases to be contrary to Ryder and Krueger.

-6-

In this case, at the time of their encounter, Deputy McClinton knew that a warrant for first-degree murder had issued for Roderick McDaniel, that he used a gun and drove a white SUV from the crime scene, and that no gun had been found. The SUV driver gave his name but did not give McClinton a look inside the vehicle, then attempted to flee by ramming the SUV into the patrol vehicle when Deputy McClinton radioed to dispatch and learned Roderick McDaniel was "him." This gave McClinton probable cause to believe he had encountered a first-degree murder suspect and deadly force may be used if necessary to prevent his escape. McClinton also had reason to believe McDaniel was armed with a firearm, making him even more dangerous to the public at large if he escaped. Though McClinton did not give a verbal warning that he was going to employ deadly force, he did order McDaniel to stop at least twice after he started reversing. Thus, he did not "stand silent before shooting." Estate of Morgan v. Cook, 686 F.3d 494, 497-98 (8th Cir. 2012).

In these circumstances, we conclude that Deputy McClinton is entitled to qualified immunity because his conduct in this case did not violate McDaniel's clearly established rights. See Plumhoff v. Rickard, 572 U.S. 765, 778-81 (2014). "An officer violates a clearly established right only if a reasonable officer in the same position would understand his conduct violates the right." Jordan, 73 F.4th at 620. The Supreme Court has repeatedly cautioned "not to define clearly established law at a high level of generality." Kisela v. Hughes, 584 U.S. 100, 104 (2018); see White v. Pauly, 580 U.S. 73, 78-79 (2017). "'Specificity is especially important in the Fourth Amendment context.'" Kisela, 584 U.S. at 104, quoting Mullenix, 577 U.S. at 12. In excessive force cases, "police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." Id., quoting Mullenix, 577 U.S. at 13.

The district court stated that at the time Deputy McClinton shot McDaniel "it was clearly established that it is unreasonable to use deadly force against a suspect merely for fleeing, even when that flight is via automobile." Maybe so, but McDaniel

was not a suspect who was "merely fleeing." Deputy McClinton had probable cause to believe that McDaniel had committed first-degree murder the day before and that McDaniel was still armed with the murder weapon. First-degree murder is as inherently violent as a crime can be. A reasonable officer aware of the Supreme Court's guidance in Garner, as applied by this court in Krueger and by the Tenth Circuit in Ryder, would believe it was constitutionally permissible to use deadly force to prevent the escape of this dangerous felon who was attempting to flee in a vehicle. Arnold does not cite, and we have not found, any post-Garner cases from this Court that clearly establish a police officer could not use deadly force against a likely-armed, first-degree murder suspect attempting to flee from arrest via vehicle. To defeat qualified immunity, "[a] plaintiff must identify either controlling authority or a robust consensus of cases of persuasive authority that placed the statutory or constitutional question beyond debate at the time of the alleged violation." Kelsay v. Ernst, 933 F.3d 975, 979 (8th Cir. 2019) (en banc) (cleaned up).

Arnold counters that "the requirement that a suspected wrongdoer's actions pose an 'immediate' threat to someone [before an officer may employ deadly force] was beyond debate in 2018." But the above-cited cases recognize that the presence of an "immediate threat" is but a single factor in the analysis. Time-wise, the immediacy of the threat is obviously different when the threat of serious physical harm is letting a dangerous felon escape into the community, not a face-to-face encounter with the officer using deadly force. "To determine whether a person is an immediate threat, an officer may consider both the person's present and prior conduct." Wallace, 843 F.3d at 768, citing Garner, 471 U.S. at 11-12. The determination of clearly established Fourth Amendment law "must be undertaken in light of the specific context of the case, not as a broad general proposition." Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (quotation omitted). We consider the totality of the circumstances in evaluating excessive force claims, "including the severity of the crime at issue." Capps, 780 F.3d at 884 (quotations omitted). Deputy McClinton is entitled to qualified immunity from Arnold's § 1983 excessive force claim.

-8-

**III.**

Arnold's ACRA excessive force claim against Deputy McClinton requires little discussion. As in McDaniel v. Neal, Arnold "made no independent arguments related to [her] ACRA claim." 44 F.4th 1085, 1093 (8th Cir. 2022). Deputy McClinton is entitled to qualified immunity as to Arnold's ACRA claim "because the ACRA is generally treated as coextensive with § 1983 and analyzed under federal standards." Id.; see Muntaquim v. Payne, 628 S.W.3d 629, 635 (Ark. 2021).

The district court's Order of March 21, 2023 is reversed in part, and the case is remanded with instructions to enter summary judgment in favor of Deputy McClinton and dismiss the case.

KELLY, Circuit Judge, dissenting.

"[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment." Graham, 490 U.S. at 395. "In Graham, the Supreme Court expressly tied the reasonableness of force under the Fourth Amendment to three factors: (1) 'the severity of the crime at issue, [(2)] whether the suspect poses an immediate threat to the safety of the officers or others, and [(3)] whether he is actively resisting arrest or attempting to evade arrest by flight.'" Atkinson v. City of Mountain View, 709 F.3d 1201, 1213 (8th Cir. 2013) (alterations in original) (quoting Graham, 490 U.S. at 396). In my view, the court does not engage with the Graham factors, instead relying entirely on "guidance in Garner" to conclude that if there is probable cause to believe that a suspect "has committed a crime involving the infliction or threatened infliction of serious physical harm," an officer may use deadly force to prevent that suspect's escape because they pose an "inherent danger." Taking into account both Graham and Garner, I submit

-9-

that the immediate threat Arnold posed when he was shot by McClinton remains in genuine dispute. See Graham, 490 U.S. at 397; Garner, 471 U.S. at 11-12.

As we have explained, "[t]he determination whether the force used to effect a seizure was reasonable ultimately requires a case-specific balancing of '"the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the countervailing governmental interests at stake.'" Chambers v. Pennycook, 641 F.3d 898, 906 (8th Cir. 2011) (citing Graham, 490 U.S. at 396 (quoting Garner, 471 U.S. at 8)). In many cases, it may be that when a suspect who has committed a serious, violent crime attempts to flee, there is an "immediate threat" to the safety of others. But to allow an inference that this is so ignores the fact-specific inquiry inherent to every excessive force case. Scott, 550 U.S. at 383 ("Although [an] attempt to craft an easy-to-apply legal test in the Fourth Amendment context is admirable, in the end we must still slosh our way through the factbound morass of 'reasonableness.'"). Furthermore, doing so unnecessarily collapses the Graham factors.

Here, the factual dispute in question is material because it concerns what—outside of attempting to flee—McDaniel was doing at the time McClinton shot him. See Scott, 550 F.3d at 383. The record may be limited, but the district court found that the video footage from Officer McClinton's bodycam and dashcam—and that of Officer J. Skinner, who was also at the scene, as backup—created a genuine dispute of material fact that precluded summary judgment on Arnold's excessive force claim. More specifically, the district court concluded that there was a factual dispute about what direction McDaniel's car was moving when McClinton fired his gun. This dispute is material because it informs how significant and immediate a threat McDaniel may have posed to McClinton and passersby. See Graham, 490 U.S. at 396. In my view, neither this conclusion nor any "implied facts" the district court may have relied on are "blatantly contradicted by the record." Scott, 550 U.S. at 380. And as a result, we lack jurisdiction over this appeal. Raines v. Counseling Assocs.,

883 F.3d 1071, 1075 (8th Cir. 2018) (finding we lacked jurisdiction to review denial of qualified immunity where district court found a dispute of material fact based on video evidence in case involving stabbing suspect apprehended with a knife in his hand).

      I respectfully dissent.

_____